[Filed June 13, 1887.]

## H. T. BINGHAM, ET AL., APPELLANT AND RESPONDENTS, *v.* CHARLES SALENE, ET AL., APPELLANT AND RESPONDENTS.

LICENSE TO HUNT—PROFIT A PRENDRE—GRANT OF.—A grant of "the sale and exclusive privilege *and easement* to shoot, take, and kill" wild foul "on the lakes, sloughs, and waters" of the grantor, executed to the grantees, "their heirs and assigns forever," with a privilege of "ingress and egress to and from said lakes, waters, and sloughs for the purpose of shooting and taking wild fowl as aforesaid," is a grant of a *profit a prendre*, and not a mere license revocable at pleasure.

SAME—GRANT—CONSTRUCTION OF—PERMITS.—That in the exercise of this right the grantees are strictly confined to the places indicated in the grant, the lakes, sloughs, etc., and the grant does *not* authorize the indiscriminate granting of permits to others to exercise the same privilege.

CONTRACTS—BETWEEN ATTORNEY AND CLIENT.—A contract which has been agreed upon between an attorney and one who afterwards becomes his client, but is not made obligatory until after the relation of attorney and client has been formed, will be sustained, where it appears that the transaction is fair and honest, that the consideration was ample, and that the client, though an illiterate person, was fully informed of the terms of the contract, and the attorney was not guilty of any breach of trust or confidence.

INJUNCTION, GROUNDS FOR REFUSING.—Where it appears that S. has granted to B. the *sole* and *exclusive* right to hunt upon the waters of S.'s land, and that B. has issued permits to numerous persons who have hunted not only on the waters, but also on the lands of S., have conducted themselves in an insolent manner, and have wounded the domestic animals of S., the court will not grant an injunction restraining S. from acts inconsistent with the nature of the contract on his part.

*A. R. Coleman,* for Appellant.

A grant of a right to kill and take game on the lands of the grantor is a grant of an interest in the land itself, and is within the Statute of Frauds. (*Webber* v. *Lee,* Law R. 9 Q. B. D. 315; *Wickham* v. *Hawker,* 7 Mees. & W. 63.)

The grant is a license of a *profit a prendre.* (*Ewart* v. *Graham,* 7 H. L. Cas. 331.)

One who takes game on another's premises gains no title, if a trespasser. (Schouler on Personal Property, § 49; *Blades* v. *Higgs,* 13 Com. B. N. S. 844; 11 H. L. Cas. 621; *Riggs* v. *Lonsdale,* 1 Hurl. & N. 923; *Carryington* v. *Taylor,* 11 East, 571; 14 Com. B. N. S. 550; 3 Hurl. & C. 644; also, *Patison* v. *Gilford,* 18 Law R. Eq. 259.)

A fishing right in waters not navigable belongs to the owners of the soil. (Washburn on Easements and Servitudes, 566–569; *Mathews* v. *Treat,* 75 Me. 594; *Wyman* v. *Olliver,* 75 Me. 421; *Beckman* v. *Kreamer,* 43 Ill. 447.)

*Whalley, Bronough & Northup,* for Respondents.

No interest passed by the deed.

Easements are rights of enjoyments in, or issuing out of another's land. (Tiedman on Real Property, § 597.)

*Profit a prendre* is a right to take something from the land. (Tiedman on Real Property, § 59.)

Under the deed nothing but a license was created, and a license is revocable at will by the owner of the land. (Washburn on Easements, 5; *Wolfe* v. *Frost,* 4 Sand. Ch. 472; *Ex parte Colerun,* 1 Cowen, 568.)

The right to take and kill wild fowl is not a right of *profit a prendre,* for wild fowl are *fere naturæ,* and not the subject of a grant.

Plaintiffs had no right to shoot on the land.

As the relation of client and attorney existed, the burden of establishing the fairness is upon the plaintiff. (Story on Equity Jurisprudence, §§ 310, 311, 312; Bigelow on Frauds, 196; *Howell* v. *Ransom,* 11 Paige, 538; *Starr* v. *Vandersheyder,* 9

Johns. 253; *Jennings* v. *McConnell*, 17 Ill. 148; *Ford* v. *Harrington*, 16 N. Y. 258; *Meryman* v. *Uber*, 59 Md. 588; 43 Am. Rep. 564; *Oakley* v. *Ritchy*, 28 N. W. Rep. 448; *Clerrie* v. *Englebrecht*, 5 Atl. Rep. 718; *Dunn* v. *Dunn*, 7 Me. 842; *Lane* v. *Black*, 21 W. Va. 617; Weeks on Attorneys at Law, § 273, pp. 442, 450, 456; *Howell* v. *Baker*, 4 Johns. Ch. 118; *Hawley* v. *Cramer*, 4 Cowen, 717; *Bernieu* v. *McClane*, 1 Hoff. Ch. 420; *Harper* v. *Perry*, 28 Iowa, 57; *Judah* v. *Trustees*, 23 Ind. 278; *Dunn* v. *Record*, 63 Me. 19.)

LORD, C. J. — This is a suit in equity to enjoin the defendants from interfering in any manner with the alleged exclusive right and privileges of the plaintiffs to go upon and over certain lands of the defendants, described herein, for the purpose of shooting, killing, or taking wild fowl in the lakes, sloughs, and waters therein and thereon, and to restrain the defendants from inviting or allowing any other person or persons so to do. Briefly, the grievances complained of are that the plaintiffs, by virtue of a deed executed to them, whereby the defendants conveyed to them, "their heirs and assigns forever, the sole and exclusive right, privilege, and easement to shoot, take, and kill any and all wild ducks and other wild fowl upon and in any and all lakes and sloughs and waters situate, lying, or upon our lands, lying in Columbia County, State of Oregon, the said lands being more particularly described as follows: . . . . And also, for the consideration above mentioned, the right of ingress and egress to and from said lakes, waters, and sloughs, for the purpose of shooting and taking wild fowl as aforesaid, to have and to hold the said easement and privilege, to them, the said H. T. Bingham and E. W. Bingham, their heirs and assigns forever," which said right and privilege depended for its value on its exclusiveness; and that, in order to protect the same, the plaintiffs posted notices upon the lands of the defendants forbidding all persons from going upon the lands of the defendants for the purpose of shooting wild fowl upon the lakes and waters thereon, and that the defendants, knowing the plaintiff's rights in the premises, tore down and destroyed said notices, and made threats of assault and personal injury to plaint-

iffs should they go upon said land to exercise their right and privilege, etc.   And, further, that the defendants have invited and permitted professional hunters to take and kill wild fowl upon said lakes and waters, to the injury of the plaintiffs, and threaten and will continue to so do unless restrained.   After denying the matters alleged, the defendants affirmatively set up that the English language is not their native tongue; that they cannot read or write it, and understand it but indifferently; that they are ignorant of all forms of law; and that plaintiffs are practicing attorneys, and were, at the time of making the deed aforesaid, employed by the defendants as their attorneys in certain matters of business, and that plaintiffs asked them for the privilege of going upon the lands to hunt wild fowl, and that the defendants expressed themselves as willing to give them, and no one else but them, the privilege to hunt upon said lands, and that thereupon the plaintiffs prepared the above grant, but at the time of signing the same the defendants declared that they did not understand its import, and particularly the defendant Christiana, to whom then and now belong said lands, and that the plaintiffs informed her that it was nothing but the privilege to go down upon said lands and hunt, etc., and that the defendants understood that the conveyance, by its terms, granted no more that a permission to hunt upon said premises; that plaintiffs have given others permission to hunt upon the premises; and that, during the hunting season, they have come upon the lands, trampled and injured the grass and crops, and by shooting in the vicinity have frightened the stock of defendants, etc., and asks that the deed be declared null and void.   The reply put in issue all the affirmative matter alleged.   The suit was referred and reported by the master, which report was set aside, and new findings made by the court, on which a decree was entered, and from which both parties appeal.

By their brief and at the argument, the first inquiry of the counsel was directed to the nature and import of the exclusive privilege granted by the deed; the counsel for the defendants claiming that nothing but a license was created by it, while the counsel for the plaintiffs insisted that it was a grant of a *profit a prendre.*

The distinction between a grant and a license is to be taken as understood, as the contention here is that the right and privilege granted by the terms of the deed do not constitute a grant of a license of a *profit a prendre*. Rights exercised by one man in the soil of another, accompanied with participation in the profits of the soil thereof—as rights of pasture or digging of sand—are termed *profits a prendre*. They are said to differ from easements, in that the former are rights of profits, and the latter are mere rights of convenience without profit. "A right to take something out of the soil of another is a *profit a prendre*, as the right of common, and also some minor rights, as a right to take drifted sand, or a liberty to fish, fowl, hunt, and hawk." (1 Crabb's Real Property, 125; Phear. Water, 57.) In *Ewart* v. *Graham*, 7 H. L. Cas. 234, Lord Chancellor Campbell said: "The property in animals *feræ naturæ*, while they are on the soil, belong to the owner of the soil, and he may grant a right to others to come and take them, by a grant of hunting, shooting, fowling, and so forth. That right may be granted by the owner of the fee-simple, and such a grant is a license of a *profit a prendre*." It is seen, then, that rights which are said to be in *prendre* are distinguished again into rights coupled with profits, which are called *profits a prendre*, or rights without any profits, which are called easements. But "the distinction between an interest in the soil, or a right to profit in it, and an easement, is not always palpable. The line of separation is sometimes obscure, in some points unsettled, with no established principles to determine it." (Davis, J., in *Hill* v. *Lord*, 48 Me. 99.) "For a *profit a prendre* in the land of another, when not granted in favor of some dominant tenement, cannot be said to be an easement, but an interest or estate in the land itself." (Walworth, Ch., in *Post* v. *Pearsall*, 22 Wend. 425.) And Mr. Washburn says: "This right of a *profit a prendre*, if enjoyed by reason of holding a certain other estate, is regarded in the light of an easement, appurtenant to such estate; whereas, if it belongs to an individual, distinct from any ownership of other lands, it takes the character of an interest or estate in the land itself, rather than that of a proper easement in or out of the same." (Washburn on Easements, 7.) But it has been expressly held

that the right to enter upon the lands of another to cut grass, for pasturage, for the purpose of hunting, or for fishing in an unnavigable stream, is an interest in the land, or a right to take a profit in the soil. (Cro. Eliz. 180, 363; *Pickering* v. *Noyes*, 4 Barn. & C. 639; *Wickham* v. *Hawker*, 7 Mees. & W. 63; *Waters* v. *Lilley*, 4 Pick. 145.) A grant of a right to kill and take game on the lands of the grantor is a grant of an interest in the land itself, and within the Statute of Frauds. (*Webber* v. *Lee*, Law R. 9 Q. B. D. 315.) In *Wickham* v. *Hawker, supra*, it was held that a grant to a person, his heirs and assigns, of " free liberty, with servants or otherwise, to come in and upon lands, and there to hawk, hunt, fish, and fowl," is a grant of a license of profit, and not of a mere personal license of pleasure, and therefore it authorized the grantee, his heirs and assigns, to hunt, fish, and fowl by his servants, in his absence, and that such a liberty is a *profit a prendre*. (See, also, Washburn on Easements, 8–11; Washburn on Real Property, 313; Gould on Waters, §§ 24, 25, 184, 185.)

Now, let us turn to the deed, and determine what the parties intended, and what interest passed. By it the defendants, for a consideration expressed, granted in words *de præsenti*, to the plaintiffs, their heirs and assigns forever, the sole and exclusive right and privilege to shoot, take, and kill any and all wild fowl upon and in any lakes, sloughs, or waters situate upon their lands, and the right of ingress and egress to and from said lakes, sloughs, and waters for such purpose. As the owners of the lands which included such lakes, sloughs, and waters thereon, the property of animals *feræ naturæ*, while on the lands or such waters, belonged to the defendants. By virtue of such ownership, the defendants had the exclusive right to shoot, take, and kill such wild fowl upon the lakes or other waters upon their lands, and they had the right to grant to the plaintiffs the sole and exclusive right to take and kill such wild fowl at the places designated in their deed. But the sole and exclusive right granted to the plaintiffs to take and kill any and all wild fowl on such lakes, sloughs, and waters is inconsistent with the right of any other persons to take or kill them, or to use and exercise such privilege at such places. It is a right exclusive of all others at such particular or

specified places. (*Holford* v. *Bailey*, 66 E. C. L. 425–447; 55 E. C. L. 1000–1007.) If this the plaintiffs' granted— this sole and exclusive privilege to take and kill such game at such places on their land — it divested them of all right and authority to permit or grant other persons to take and kill such wild fowl upon any lake, slough, or waters lying upon their lands. Here there is a grant of a sole and exclusive right and privilege to the plaintiffs, their heirs and assigns forever, to shoot, take, and kill such game on the lakes and waters upon the lands of the grantors, and which right, in *Webber* v. *Lee, supra,* was held to be a grant of an interest in land, and within the Statute of Frauds. This right, then, to take something out of the soil, or from the land of another, which includes shooting, hunting, and fishing, is a *profit a prendre;* and, Mr. Washburn says, "is so far of the character of an estate or interest in the land itself that, if granted to one in gross, it is treated as an estate, and may therefore be for life or for inheritance." (Washburn on Easements, 9). It is manifest, therefore, that the contention that the deed only created a license, revocable at the pleasure of the defendants, cannot be sustained.

We do, however, concur in the construction of the deed insisted upon by counsel for the defendants, that the use and enjoyment of the privilege is limited and confined strictly to the places designated. There is no authority or privilege granted to shoot, take, and kill wild duck or other wild fowl on the lands of the defendants. It is confined to the waters lying upon the lands of the defendants. The deed is specific upon this point. The right and privilege to be exercised, used, and enjoyed, is " upon and in any and all lakes, sloughs, and waters situate, lying, or upon our lands," etc. The plaintiffs have the right to shoot, take, and kill any and all wild fowl in or upon the lakes and waters situate and lying upon the lands of the defendants, but the rights and privilege is limited and confined to such designated places, and cannot be exercised elsewhere by force of the grant.

We concur, also, in the construction maintained by counsel for the defendants, that the deed does not authorize the indiscriminate giving of passes or permits to various and numerous persons, to

use and enjoy the sole and exclusive right and privilege granted to them, their heirs and assigns forever.   For the purpose of enjoying the privilege granted, the plaintiffs may shoot and take and kill the wild fowl upon the lakes and waters on the lands of the defendants, or they may sell and assign their right and privilege, but there is no authority to give such passes or permits, by whatever name designated, to others.   In *Wickham* v. *Hawker, supra,* Parke, B. said: "But this is a grant by deed to persons, 'their heirs or assigns.'   It is clearly intended that not merely the particular individual named, but any one to whom they or their heirs choose to assign it, should exercise the right, which seems to us to show that it is an interest or a *profit a prendre* which is intended to be granted."   And it may be said, *en passant,* that much of the trouble which has caused the present suit, as indicated by the evidence, is undoubtedly due to the misconduct and abuse of the privilege by persons to whom such permits were given.   Some of these persons were not only insulting to the defendants at places upon their lands where such persons had no lawful right to be without the consent of the defendants, but they asserted defiantly the right to use, and did use, the privilege for purposes and in a manner and at places unauthorized by the terms of the grant.   While "the supposed odiousness of this right," as Lord Campbell said, "cannot influence our decision," the fact, at least, admonishes us that no intendments or presumption are to be indulged in in the construction of the grant not warranted by the plain import of its terms and provisions.   A grant of this description is construed strictly.   The court is therefore of the opinion that such permits were unauthorized, and not within the purview of the privilege granted.

It is also contended by counsel for the defendants that the right of ingress and egress is limited to the lakes and waters.   The provision on this subject is: "The right of ingress and egress to and from said lakes, waters, and sloughs, for the purpose of shooting and taking wild fowl, as aforesaid."   The evident object of this provision was to give the plaintiffs ingress and egress to and from the lakes and sloughs—the places where the privilege of killing and taking of wild fowl was to be exercised and used;

and if in ingress to and egress from, or lake to slough, was over the land, the right to pass over the land for that purpose was granted. Of course, this right can and must be used and enjoyed without detriment or injury to the crops and grass and stock of the defendants.

Thus far we have been considering solely the terms of the grant as indicated upon the face of the instrument. We come now to consider the defenses of the defendants. Substantially, they are divisible into two parts; and, briefly, are (1) that the defendants, being unable to read and write, signed the deed, relying upon the representations of the plaintiffs that its provisions only created a personal license to come down to the farm of the defendants to shoot and hunt wild fowl; and (2) that at the time the deed was executed, the plaintiffs were acting as the attorneys for the defendants, and availed themselves of the confidence arising from that relation to procure their consent to grant them such privilege on the representations stated. It is sufficient to say, without going much into detail, that we do not think that either of these defenses are sustained by the evidence. It is true that the defendants cannot read or write, but both speak the English language reasonably well, and the evidence discloses that they are persons of ordinary understanding, and not negligent of their interests. At the time the deed was executed, the defendants sought the law office of the plaintiffs for the purpose of shifting the title from the defendant husband to the defendant wife to avoid a liability to which it might be exposed by remaining in his hands. The object of that arrangement, and the effect sought by the transfer, they evidently understood; and after the explanation made to them of the nature of the right and privilege contained in the deed executed to the plaintiffs, we cannot doubt that they understood it—not, it may be admitted, in the technical sense, but in the sense that it was the grant of an exclusive right in perpetuity, and not a mere personal license, revocable at their pleasure. They might not have known it was a *profit a prendre;* but, to accord to them ordinary sense after the explanation given, they must have understood that they were granting to the plaintiffs, their heirs and assigns forever, the exclusive right to shoot and take

and kill wild fowl upon the lakes and waters on their lands. There is no difficulty in understanding the nature and duration of the privilege granted, although disagreements might arise, under the terms of the grant, as to how and where the privilege is to be used and enjoyed. This often happens with men of superior understanding and attainments in respect to writings, but it is no ground for declaring such writing invalid. We recognize it to be the duty of a party when dealing with unlettered persons who can neither read nor write, and taking from them a deed, to show, when seeking to establish or enforce some right under it, that it was read and fully explained to them before it was executed. All this was done, and the evidence to this point is explicit and conclusive. Judge Rice, who took the acknowledgment, testifies: "After the instrument was completed, which was in a few minutes, it was read over to the parties. I may have read it myself to them; but I remember distinctly that it was read by some one while I was present, and that there was a very considerable conversation between the parties and both the plaintiffs concerning the instrument and its contents. This made a very distinct impression on my mind, from the fact that there was a great deal more than I considered usual care to have the grantors fully understand the contents of the instrument." Nor do we think any declarations were made by the plaintiffs at the time, designed to deceive or mislead the defendants, or as relevant to this matter, for any other purpose than to explain the true purport of the privilege granted. All things taken together, it is certainly clear that the plaintiffs understood what they were doing, and that the privilege granted was not a mere license as alleged.

As to the correctness of the principle so ably maintained by the counsel for the defendants in respect to the duties and obligations of attorneys to their clients, the measure of faith and diligence required of them, and the great jealousy with which the courts watch all transactions between them, and the affirmative duty of the attorney to show that the transaction was fair and honest and above all suspicion — in a word, that the confidence reposed has not been betrayed — we heartily approve and indorse. The prin-

ciple of a public policy, which affects with a presumption all transactions between persons standing towards each other in a confidential relation, that an undue influence has been exercised, and which devolves upon him who occupies the post of active confidence to show that presumption adequately rebutted, is founded in the soundest judicial wisdom. But the fact is, so far as relates to this case, it has been previously agreed, when no such relationship existed, that the grant of this privilege should be made. It is true, it had not been put into any obligatory form, and yet the evidence indicates that when done it was done in the pursuance of that agreement, and as necessary to be done before the title was transferred through a third party from the husband to the wife for the purposes already stated. Besides, we think that the transaction was fair and honest, and that the consideration given was the equivalent of the value of the privilege when granted, and that the plaintiffs were not guilty of any violation of the trust or confidence reposed in them. For these reasons, we do not think that the defense which seeks to set aside and declare invalid the grant is made out.

We now come to the grounds of the complaint, and the issue joined upon it, in connection with the evidence elicited, for the purpose of ascertaining whether the plaintiffs, in view of all the facts, have made such a case as will authorize the injunction prayed for. The facts alleged, and their denial, have already been stated. Without detail, it is sufficient to say there is evidence tending to prove the grievances complained of; and, if there was not also evidence tending to show that the plaintiffs, in the same connection, have not been free from fault, we should be disposed to grant the relief prayed for, notwithstanding our doubts that the remedy is at law, and not in equity. It was said, in *Weiss* v. *Jackson Co.* 9 Or. 471, that the granting of an injunction is an equitable proceeding, and that the party seeking this peculiar equitable relief should show that he has a right, under all the circumstances, to this extraordinary writ. It is admitted that the plaintiffs have issued permits to very many persons to use and enjoy the sole and exclusive privilege granted to them, their heirs and assigns. In this they transcended their rights

under the terms of the grant.   They claimed the right also to use the privilege to kill and take wild fowl at places not authorized by the grant.   Some of the persons to whom the plaintiffs gave these permits not only claimed the right to hunt and shoot and roam where they pleased on the lands of the defendants, but in some instances behaved in a most impudent and insolent manner to those old people, upon whose land they had no right to be without their permission for any purpose whatever.   In substance, the evidence is that they left the gates open, shot their guns off in the vicinity of the house and barn, sometimes hitting the cattle and frightening the stock; twice hitting and wounding a valuable shepherd dog, which finally had to be killed in consequence of the wounds thereof; roaming over the lands at their will; and in one instance, when ordered to leave the place, one of these persons threatening to have one of the defendants arrested; another telling her: "You have nothing to say about this place; it is none of your business; I got a permit in my pocket;" and much more of like character.   Under this state of facts, is it surprising that the defendants were exasperated and resisted, and may we not suppose that, if the privilege granted had been used in conformity with its terms, the present misunderstanding might have been avoided?   It may be admitted that the defendants have not been without fault; but have the plaintiffs been free from blame?   We do not care to pursue the subject further.

Our opinion is, a case has not been made which would authorize the issuance of this extraordinary writ as prayed for, and that the decree must be reversed, and the bill dismissed; each party paying their own costs and disbursements.