Argued December 10, 1909, decided January 11, 1910.

## SALENE v. ISHERWOOD.

[106 Pac. 18.]

NAVIGABLE WATERS—RIPARIAN RIGHTS—MAINTENANCE OF HOUSEBOAT.

1. The maintenance of a houseboat on a navigable slough, under the facts peculiar to this case, cannot be restrained by an abutting landowner.

GAME—GRANT OF HUNTING PRIVILEGES—EXTENT OF RIGHT—CONSTRUCTION OF GRANT.

2. A deed granting the right to hunt game on certain premises, must be construed with reference to the manner of hunting, generally in use, in the vicinity at the time of its execution, and where under a grant of the right to shoot and take "wild duck and other wild fowl on and in any and all lakes, sloughs, and waters situated" on lands described, with the right of

passage to and from such waters for the purpose of shooting and taking such wild fowl, the grantees may maintain such small boats and temporary structures as will not interfere with the grantor's use of an adjacent farm, including the erection of blinds, use of decoys, and keeping bird dogs, and in addition they have the right to recover such game as may, when shot, fall upon adjacent lands.

GAME—GRANT OF HUNTING PRIVILEGES—EXTENT OF RIGHT—CONSTRUC-
TION OF GRANT.

3. Under a deed granting to persons named, and "to their heirs and assigns forever, the sole and exclusive right" to hunt and take wild fowl on the waters bordering on land described, the number of the grantees or heirs cannot be restricted by the grantor.

GAME—GRANT OF HUNTING PRIVILEGES—EXTENT OF RIGHT—CONSTRUC-
TION OF GRANT.

4. Where the grantor of the right to hunt and take wild fowl on certain premises for a number of years after the growth of the natural food for such fowl ceased, recognized the grantees' right under the deed to scatter grain to feed such fowl and to maintain a watchman for that purpose, the deed will be construed as granting such right; that being the practical construction of the parties.

GAME—GRANT OF HUNTING PRIVILEGES—EXTENT OF RIGHT—CONSTRUC-
TION OF GRANT.

5. Under a deed granting to persons named, and "to their heirs and assigns," the right to hunt and take wild fowl on waters bordering on described lands, the grantees are not entitled to issue permits to hunt on such lands to servants or other persons.

GAME—GRANT OF HUNTING PRIVILEGES—EXTENT OF RIGHT—CONSTRUC-
TION OF GRANT.

6. A deed granting the right to shoot and take wild fowl from the lakes, sloughs, and waters situated on certain premises does not authorize the grantees to dam the outlet of any of such waters.

From Columbia: THOMAS A. MCBRIDE, Judge.

This is a suit by Christine M. Salene against S. W. Isherwood, A. F. Smith, Charles A. Burckhardt, George W. Hoyt, and William T. Muir to enjoin them from hunting on plaintiff's farm and from maintaining any scows, house-boats or other structures upon any of the waters on or adjacent to plaintiff's premises. From a decree in favor of defendants, plaintiff appeals.      REVERSED.

For appellant there was a brief with oral arguments by *Messrs. Coovert & Stapleton.*

For respondents there was a brief and an oral argument by *Mr. William T. Muir.*

MR. JUSTICE KING delivered the opinion of the court.

This is a suit to enjoin defendants from hunting on plaintiff's farm, except upon the lakes or sloughs thereon, and from maintaining any scows, house-boats, or other structures upon any of the waters on or adjacent to her ·premises. The proceedings further question the right of more than two persons to hunt thereon; of watchmen or other servants on or about the lakes or sloughs; the maintenance of any dams, blinds, or other artificial structures thereon or thereabouts; the placing of wheat or other feed in the vicinity for the purpose of luring wild fowl thereto; or to the keeping or use of dogs on or about the premises for hunting or other purposes. ·

1. This controversy grows out of a deed, executed February 18, 1878, to the defendants' grantors, which instrument, omitting signatures and acknowledgment, is as follows:

"Know all men by these presents: That we, Charles Salene and Christine M. Salene, his wife, of Columbia County, Oregon, for and in consideration of the sum of one dollar to us in hand paid by H. T. and E. W. Bingham, of Portland, Oregon, do hereby give, grant, sell, and convey to the said H. T. and E. W. Bingham and to their heirs and assigns forever, the sole and exclusive right, privilege and easement to shoot, take, and kill any and all wild duck or other wild fowl upon and in any and all lakes, sloughs, and waters situate, lying or upon our land lying in Columbia County, State of Oregon, the said lands being more particularly described as follows, viz: Notification No. 7428, donation land claim of Charles Salene, being the northwest quarter of the southeast quarter and the northeast quarter of the southwest quarter, and lots 1, 2, and 3 of section 28, in township 4 north of range 1 west of the Willamette Meridian; and also lots 1, 2, and 3 of section 27, lots 4 and 5 of section 28, lot 8 of section 33, and lot 1 of section 34, in township 4 north of range 1 west of Willamette Meridian; all of said lands herein described being situated in said Columbia County, Oregon. And also for the consideration above named, the right of ingress and

egress to and from said lakes, waters and sloughs for the purposes of shooting and taking wild fowl as aforesaid. To have and to hold the said easement and privilege to them, the said H. T. Bingham and E. W. Bingham, and to their heirs and assigns forever. In witness whereof we have hereunto set our hands and affixed our seals this 13th day of February, A. D. 1878."

The effect of this deed, and rights thereunder, were largely determined by this court in *Bingham* v. *Salene,* 15 Or. 208 (14 Pac. 523: 3 Am. St. Rep. 152), a suit between plaintiff and defendants' grantors, involving a construction of the above instrument, including a number of the questions here presented, some of which were adjudicated, making a determination thereof, at this time, unnecessary. The points there decided were: That the deed conveyed to the grantees named therein, their heirs and assigns forever, the sole and exclusive right and privilege to shoot, kill, and take any wild fowl upon and in any of the lakes, sloughs, or waters situated upon their lands, with the right of ingress and egress, for such purposes, to and from the waters mentioned; that in the exercise of this right the grantees, and their successors in interest, are confined to the places indicated; and that this grant excludes the right of the owners from permitting others to exercise the privileges thus granted. Other matters, incidental to the foregoing, were determined, but a mention of only those alluded to is necessary for a consideration of the additional features here presented.

It appears from the evidence herein that, at the time of the execution of the deed, it was, and at all times since has been, necessary, for the successful shooting and retrieving of birds, to use decoys and small boats, and to erect blinds in and about the lakes and sloughs. The house-boat, complained of, is situated upon what is known as Willamette Slough, the navigability of which is conceded. This house-boat is used by the sportsmen

interested as headquarters while in the vicinity, and is occupied permanently, during the "open season," by a watchman, kept there for the purpose of feeding the game, and to prevent trespass. The slough, being navigable, it follows there can be no question, so far as plaintiff is concerned, but that the defendants are entitled to maintain their house-boat thereon.

2. The deed must be construed with reference to the manner of hunting generally in use in the vicinity at the time of its execution, in the light of which it follows that defendants have the right to maintain, to the extent essential to the successful shooting of wild fowl, such small boats and temporary structures as may not interfere with plaintiff's proper use of her farm adjacent to the lands upon which the waters are situated, including the erection of blinds, use of decoys, and the keeping of bird dogs. In this, however, as held in the former controversy, they are limited and confined to such places as are designated in the deed, the exact boundary of which it is impossible to ascertain from the testimony adduced; and we do not feel justified in remanding the cause for the further taking of evidence in reference thereto, especially since no request therefor has been made. We deem it best to leave this feature, as to what constitutes reasonable limits, for future determination, should the point arise, either in some suit brought for that purpose, or in an action if trespass should be charged, etc. We hold, however, that for the objects enumerated in the deed, defendants are limited to a reasonable space adjacent to the lakes and sloughs, in which space their dogs may be used for hunting, or exercised when not in use, and, so long as within such reasonable limits, are entitled to adopt any equitable methods for the purpose of protecting their rights. This necessarily includes, in addition to other privileges designated, the right to recover such game as may, when shot, fall upon adjacent lands, but not the

privilege of hunting thereon, or shooting therefrom. The place of ingress and egress, to which in the former suit they were held entitled, appears to have been selected by placing and maintaining their house-boat at a point northeast of Wapatoo Lake, to which they are confined, but are entitled to use any reasonable means for such entrance and exit.

3. Another question presented relates to the number of persons, who, under the deed, are entitled to exercise the privileges granted. The deed plainly conveys to the grantees named therein, and "to their heirs and assigns forever, the sole and exclusive right," etc. It needs no discussion to demonstrate that, under these granting words, the number of heirs cannot be limited. The rule on that subject is too well settled to admit of doubt. The conveyance, as held in the former proceeding, grants an irrevocable interest in the land itself, and we can conceive of no rule of construction whereby, under the granting words used, the number of grantees may be restricted, and at the same time the number of heirs remain unlimited. The same rule must apply to each. However, the dangers contemplated, by placing no restriction upon the number, are necessarily obviated by the nature of the *profit a prendre* granted. The birds and wild fowl are not only constantly being limited and reduced, but, by their habits, are so distributed between, and restricted to, the localities adapted to their nature, as to keep in check the number of sportsmen in any vicinity.

4. A question, more difficult of solution, bearing upon this feature, concerns the right to feed the game, with the intent of enticing it to return. It appears that prior to 1894 a natural food, known as wapatoos, grew in such quantity in the locality in question, as to attract large numbers of ducks and other wild fowl thereto, but during that year, either on account of unusual high water, or because of other, possibly unknown, causes, this natural

food supply disappeared, since when, few, if any, game birds return without artificial feeding. For this purpose the watchman, kept there, places in and about the lakes large quantities of wheat, which, it is ably argued, should not be permitted. It is insisted that the land and water should be left in their natural state, and the defendants allowed to seek only such game as may be obtained without feeding. It appears, however, that the plaintiff, for a number of years after the growth of wapatoos ceased, recognized the grantees' rights, under the deed, to feed the birds, and to maintain a watchman for that purpose, aiding them, in many ways, in carrying out their plans. While it is doubtful whether the language of the deed implies the right, under ordinary circumstances, to supply artificially what nature has extinguished, the interpretation placed upon the terms of the instrument, which upon this point is not specific or clear, is adequate to show how it was understood, interpreted, and applied by the parties thereto, and the evidence bearing upon this feature clearly and without doubt indicates that plaintiff so applied, and acted upon, such construction for many years after the natural food supply became extinct. The construction thus placed upon the contract by the parties is decisive on this point. *Harlow* v. *Oregonian Pub. Co.* 53 Or. 272 (100 Pac. 7). We hold, therefore, that defendants are entitled to, and may feed, or cause to be fed, the wild game upon the premises, to such extent as may not substantially injure the waters and lands upon which located.

5. It was held in the former proceeding that the grantees, under the deed, could not issue hunting permits to others, but it is here argued that this should not preclude them from acting through their servants. On this feature we find no authority directly in point. In the extensive consideration and thorough presentation of the defense our attention is directed to numerous and

well-considered cases, where rights to remove soil, to mine coal, cut timber, etc., have been held impliedly to give the authority to employ all servants by the purchaser deemed essential. Such cases are only analogous to the extent of enabling defendants to protect and maintain their property. When the privilege of removing timber, or mining, is given, there is necessarily a limit to the thing granted; when worked out, their right ceases. The power to remove, in the absence of terms delegating such rights, would not include the right to replant the timber, or to replace the thing removed. The thing granted, under such circumstances, is fixed and definite. No injury can inure if all is removed in a given space of time. But here the *res* granted may never be reduced by the exercise of the privilege granted; though the birds may be extinguished today, others may return tomorrow. If, then, the grantees shall be unlimited in the right to feed, as well as in the hunters to seek the entrapped game, it may amount to an extension of the grant, rather than the limitation invoked by this court in the former suit. But whatever may be found to be the rule elsewhere, the former suit forbids the issuance of permits to persons other than those holding under the deed, and we think to accede to defendants' contention on this point, and permit the grantees' servants, or persons purporting to act as such, to avail themselves of this privilege, would amount to the indirect granting of a privilege denied in *Bingham* v. *Salene*, where Chief Justice LORD says: "There is no authority to give passes or permits by whatever name designated," for which reason we hold that the deed limits the number to the particular grantees named therein and to their successors and assigns. When originally given the deed was for only a nominal consideration, and with the probability of the grantors not being able to foresee the invaluable rights which in time would develop thereunder. It becomes necessary, there-

fore, under such circumstances, to construe the deed strictly, thereby confining us to the interpretation above indicated; and such is the effect of the principles in that respect enunciated in the former proceeding.

6. There is some evidence to the effect that defendants dammed one of the outlets of Round Lake, the object of which is not clear, but evidently for the purpose of keeping out the carp, or to prevent the diminution of the lake. In either event their right to do so cannot be upheld. The lakes and other waters must, so far as consistent with the right to hunt thereon, be left in their natural state.

The decree of the court below will therefore be reversed, and one entered in conformity with these views. The costs in the trial court will not be disturbed; plaintiff to have her costs on appeal.                                     REVERSED.

MR. JUSTICE MCBRIDE, having tried the cause in the court below, took no part in this decision.

---

OVERRULED.