Argued March 28, decided April 23, rehearing denied May 21, 1912.

## ISHERWOOD *v.* SALENE.

[123 Pac. 49.]

GAME—RIGHTS OF HUNTING.

1. The right to hunt over land under a grant of the privilege of hunting is limited to the usual methods used in the vicinity at the time of the deed.

GAME—HUNTING—PROFIT A PRENDRE.

2. The grant of a profit a prendre such as a right of hunting over land must be strictly construed, and cannot be extended beyond the terms of the deed.

GAME—RIGHTS OF HUNTING.

3. Where the owner of land granted plaintiffs the exclusive right to shoot and kill any and all wild duck in any lakes or waters lying on his land, he might for the purpose of better husbandry, if in good faith, cut the brush and drain the water from all of his land, and thus injure the hunting.

GAME—RIGHTS OF HUNTING.

4. Where an owner of land who granted another the right to kill all wild duck found thereon in bad faith drained the land so as to injure the hunting, he is liable in damages to the owner of the privileges of hunting.

GAME—EASEMENT—PROTECTION AND RELIEF.

5. Where an owner of land who conveyed to plaintiffs the sole and exclusive right to shoot and kill all wild duck and other wild fowl on any of the lakes or waters situated on his land wrongfully drained his land so as to destroy the right of hunting, plaintiffs had no grounds for recourse to equity; the deed being unambiguous, and damages at law being adequate compensation.

From Columbia: JAMES A. EAKIN, Judge.

This is a suit by F. W. Isherwood, A. F. Smith, Chas. A. Burckhardt, David L. Williams and William T. Muir, against Christine Salene, to enjoin defendant from draining and reclaiming certain lands upon which plaintiffs claim the right to hunt wild duck and other water fowl. From a decree in favor of plaintiffs, defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Coovert & Stapleton,* with an oral argument by *Mr. Elmer E. Coovert.*

For respondents there was a brief over the name of *Mr. William T. Muir,* with an oral argument by *Mr. W. L. Brewster.*

Opinion by MR. CHIEF JUSTICE EAKIN.

On February 13, 1878, the defendant, Christine Salene, and her husband Charles, now deceased, conveyed to "H. T. and E. W. Bingham, and to their heirs and assigns forever, the sole and exclusive right, privilege and ease-

ment, to shoot, take and kill any and all wild duck and other wild fowl upon and in any and all lakes, sloughs and waters situate, lying or being upon our land," etc. Plaintiffs are the grantees of the Binghams of such right and privilege, and they bring this suit to enjoin defendant from draining Wapato, Big Slavin, Round, and Knighton Lakes, and certain sloughs, situated on her lands, which she threatens to do, and also from cutting and burning brush and timber which borders the lakes. These lakes cover almost one-sixth of the farm of defendant. The land upon which the lakes are situated is the donation land claim of Charles Salene, and consists of about 480 acres, through which Willamette Slough, a navigable stream, flows. Much of the farm is overflowed during the winter and spring months, especially when the water is high in the Columbia River. When the waters are low, the tide rises about three feet in the river and the slough. At the low stage of the water in the slough, not at low tide, but very near it, the elevation of the surface of the water in the lakes is about three feet higher than the surface of the water in the Willamette Slough. In the dry season the depth of the water in the lakes is from four inches to a foot. The evidence shows that two of the lakes cover about forty acres of ground, while the portion of the other two, situated on defendant's land, cover nearly as much. Part of the farm is covered with timber and part with brush, while the lakes are bordered with willows. Willamette Slough flows within 200 or 300 feet of two of the lakes. Defendant's residence is between Wapato Lake and the slough, and she uses the farm as a stock and dairy farm.

From the time of the execution of the deed from defendant to the Binghams, there have been disputes as to the rights of the Binghams and their successors and continual trouble between plaintiffs and defendant.

Plaintiffs' grantors treated the grant as a license to use defendant's place as they pleased, as was found by this court in *Bingham* v. *Salene,* 15 Or. 208 (14 Pac. 523: 3 Am. St. Rep. 152), and plaintiffs now contend for rights which can only be sustained upon the theory that they have a freehold interest in the land rather than an incorporeal hereditament. In 1909 the rights of plaintiffs, under defendant's deed, were again before this court (*Salene* v. *Isherwood,* 55 Or. 263: 106 Pac. 18), in which plaintiffs were restrained from certain encroachments beyond the terms of the deed, and by this suit they again ask to have defendant limited in the improvement and use of her farm. In the opinion in the case last referred to defendant's right to tempt the ducks to the lakes in increased numbers by placing feed for them there under the terms of the deed was held doubtful, but, as the owner had previously recognized the right, defendants were sustained in the exercise of it.

1. Plaintiffs now contend for rights not expressly granted by the deed, but implied therein, which can only be sustained on the theory that plaintiffs' interest, not only in the lakes, but in the lands bordering thereon, is a freehold interest. The right to hunt under such a grant is limited to the usual and reasonable methods generally used in the vicinity at the time of the execution of the deed. *Salene* v. *Isherwood,* 55 Or. 263 (106 Pac. 18) ; *Bingham* v. *Salene,* 15 Or. 208 (14 Pac. 523: 3 Am. St. Rep. 152) ; *Hilton* v. *Greene,* 2 Fost. & F. 821. Under such a deed, the grantor is under no obligation to maintain a preserve for the pleasure and sport of the grantees, but,they must exercise the right in the condition it may be at the time.

2. We are cited to no cases upon the questions involved here other than the two Oregon cases, *Salene* v. *Isherwood,* 55 Or. 263 (106 Pac. 18) ; *Bingham* v. *Salene,* 15 Or. 208

(14 Pac. 523: 3 Am. St. Rep. 152), and there are but few American cases on the subject and none discuss this question, viz., the extent of the rights of the grantee in a hunting privilege. *Bingham* v. *Salene,* 15 Or. 208 (14 Pac. 523: 3 Am. St. Rep. 152), is one of the principal American cases cited in the text-books and cyclopedias upon the effect of such a grant, but there are several English cases quite in point. *Jeffryes* v. *Evans,* 19 C. B. (N. S.) 246 (1865), is a case where the defendant leased the land to Rees, reserving to himself the exclusive right to shoot, fish, and sport thereon, and thereafter he demised to plaintiff the hunting and fishing privilege reserved in the former lease. Rees, the lessee under his lease, cut down certain furze-cover and woods on the land, which constituted shelter for rabbits and other game, of which plaintiff complained. In deciding the case, Chief Justice EARLE, says:

"The next question arises upon the second breach, which alleges that Rees, lawfully claiming, and in fact having, through and under the lessors, the right to cut down divers furze-covers, woods, and plantations in and upon the lands over which the plaintiff had under, and by virtue of the said indenture the exclusive right of shooting and sporting. * * It is contended on the part of the plaintiff that the covenant for quiet enjoyment of the premises demised and granted was impliedly a covenant not to grub up or destroy the furze and underwood; and so the breach of it was an eviction of the plaintiff from his right of sporting. To this it seems to me there is a short answer. There has been no eviction. The plaintiff has just as much right to shoot and sport over the 30 or 40 acres of land which has been so treated as he had before; and that is all the plaintiff covenanted that he should have."

Mr. Justice WILES, in the same case, says:

"As to the other point, the argument urged on the part of the plaintiff would have been entitled to much weight if the grant had been of the woods and underwoods,

though, if it had been a grant of the latter, I should have thought that the tenant might lawfully have cut the underwood in the usual and accustomed way. * * The grant is of the exclusive right of fishing and sporting over and taking the game, rabbits, and wild fowl on the land demised, and on that under lease to Rees. I apprehend that such a grant as that does not prevent the landowner or his tenants from using the land in the ordinary and accustomed way, provided they do not resort to any expedients for destroying or driving away the game. Cutting furze and underwood in the ordinary course of the cultivation of the land cannot be said to be a willful destruction of the game."

Mr. Justice SMITH, in the same case, says:

"It appears to me that the cutting of the furze and underwood, which may have been done in the ordinary course of good management of the farm, was not an interruption of the enjoyment of the incorporeal hereditaments granted to the plaintiff. He had the same right to sport over the land as before. If he wished to have the condition of the land as to furze and underwood preserved, he should have expressly stipulated that the present mode of cultivation of the land should not be altered."

In *Boyle* v. *Holcroft,* 1 Irish Rep. 245, 250 (1905), Mr. Justice BARTON says:

"I take it that as a general rule, so long as the tenant is *bona fide* and reasonably managing and using the lands, the owner of the fishing rights must be content to exercise his right upon the lands in the condition in which they may happen to be from time to time."

In *Fetherstonhaugh* v. *Hagarty,* 3 Law Rep. (Ire.) 150 (1878), where a lease was given, reserving to the owner the hunting privilege, the lessee ploughed 40 acres of ground and thus broke up and smothered the rabbit burrows, to the injury of the hunting. It is held that a tenant under a lease such as this, where an exclusive profit a prendre is reserved or granted to the land-

Sig. 19

owner, cannot be made answerable for acts done in the ordinary and porper cultivation of the farm, even though they result in the destruction of game.    In *Gearns* v. *Baker, Law Rep.* 10 Chanc. App. 355 (1875), it is held that a landowner who has demised for a term of years the right to shoot over his lands is not thereby prevented from cutting timber, as he thinks fit, in the ordinary managament of his land, although injurious to the shooting. Sir W. M. James, L. J., says: "The agreement is an ordinary agreement for letting shooting, and I must say that it would be an immense suprise to many persons who let shooting in this way to learn that they are to be interfered with by this court or by any other court in their mode of managing their own property.    It is preposterous to suppose that a man who grants a shooting lease for 21 years is to be dictated to by this court as to whether he shall cut down a tree or remove a coppice, because by so doing he would be driving away the hares or interfering with the breeding of pheasants.    If men mean to acquire such rights, they must express their meaning clearly.    I am of the opinion that such rights are not expressed and not implied in the ordinary grant of shooting, and that this court has no right to interfere in the way suggested."

These cases reflect the views of eight different judges, and cover a period from 1863 to 1905, and we think their reasoning is sound.    We find no case to the contrary.    The opinion in *Bingham* v. *Salene*, 15 Or. 208 (14 Pac. 523: 3 Am. St. Rep. 152), construes this deed to be a conveyance of license of a profit a prendre, and holds that the right cannot be extended beyond the terms of the deed. Lord, C. J., says: "While 'the supposed odiousness of this right,' as Lord Campbell said, 'cannot influence our decision,' the fact, at least admonishes us that no intendments or persumptions are to

be indulged in in the construction of the grant not warranted by the plain import of its terms and provisions. A grant of this description is construed strictly." And speaking of this same deed in *Salene* v. *Isherwood,* 55 Or. 267 (106 Pac. 18), it is said that the deed is to be construed strictly. Although the conveyance was upon a valuable consideration, yet it was merely nominal, and the grantors evidently had no thought that they were deeding away their right to control and farm one-sixth of their land, and they did not grant more than the privilege of shooting in certain places on the farm such wild fowls as might by their own inclination be found there in certain seasons in their migrations, and the grantees of the privilege or their assigns have no ground upon which to ask more; nor is the court justified in implying more than is expressed in the deed.

This brings us to the application of the facts to this statement of the law. It is quite apparent that there is bad feeling between the parties hereto, and, if defendant has endeavored to throw every obstacle in the way of successful shooting, as claimed by plaintiffs, that fact might tend to give her acts in cutting brush and making fires on the immediate border of the lakes the appearance of an effort to drive away the birds or make it more difficult for plaintiffs to shoot them, and not for the *bona fide* purpose of clearing the land in the interest of better farming. If she is systematically clearing her land, evidencing a *bona fide* intention to improve it, no complaint can be made against her.

3. As to the draining of the lakes, the complaint is that she threatens to drain them, and she admits such a purpose. Much evidence was taken upon the question whether they could be profitably drained. If they cannot be successfully drained, then the water will still remain for the ducks. If they can be, then surely, in

the interest of good farming, she should be permitted to do it, and it is not for the court to say whether she can or cannot. We can only determine whether, by virtue of the conveyance of the hunting privilege, she can be permitted to do so, and the same may be said as to the use she can make of the land when drained. She may get much or little off the ground when drained, but this is her affair, and not plaintiff's.

4, 5. For cutting and burning brush in bad faith, in a manner to injure the hunting, defendant would be liable to plaintiffs in damages. But the deed is not ambiguous nor of doubtful meaning, and plaintiffs have shown no ground for equitable relief. If defendant is wrongfully destroying plaintiffs' hunting privilege or in bad faith commiting acts that drive or keep away the birds from the lakes, the remedy is adequate and complete at law, where a jury may determine whether cutting and burning brush at the time and place, and in the manner complained of was done in bad faith, and, if so, plaintiffs can be fully compensated in damages.

The decree is reversed and the suit is dismissed.

REVERSED: REHEARING DENIED.