## John P. Clark v. Edward Campau et al.

*Riparian rights : Boundary between adjoining owners.* The boundary between adjoining riparian owners is to be determined, by extending a line from the boundary at the shore, perpendicularly to the general course of the stream opposite that point. *Lorman v. Benson 8 Mich. 18 ; Rice v. Ruddiman 10 Mich. 125,* recognized and approved.

*Heard October 21. Decided October 26.*

Case made from Wayne Circuit.

This was an action of trespass brought in Justice's court for trespass upon land. Plea, with notice that the title to land would come in question, was interposed, and the case certified to the Circuit Court under the statute.

The declaration was in the usual form. The issue was tried by the Court without a jury. All the facts being stipulated, and at plaintiff's request the Court made a special finding as follows:

"That plaintiff is the owner in fee of Private Claim No. 583, and defendant Campau, of Private Claim No. 563 in Springwells, Wayne County, which private claims are adjoining and both of which border upon the Detroit River. That the patents from the United States for these two private claims, issued to the grantors of plaintiff and defendant Campau, respectively bear date the same day and commence and terminate their description of boundary upon the river bank, and are silent as to any riparian own-

ership. That the easterly line of Private Claim 563 (defendant Campau's,) and the westerly line of Private Claim 583 (Clark's) are parallel, and strike the river bank nearly at right angles. That the dividing line between the two claims also runs parallel with the other side line until within three chains twenty-eight links of the river bank, when it makes an angle of five degrees easterly, and upon Private Claim 563 of Campau's. That the act complained of as a trespass was done by defendant Campau and defendant Nichols under his direction, and consisted in driving piles upon the land covered by water,

between the now bank and the centre of the river. That, if the dividing line between the two Private Claims ought to be projected to the thread of the stream, in its direction as it touches the river bank running out diagonally, then defendants are guilty of the trespass as alleged; if said line ought to be projected from the now bank, as near as may be, at right angles and parallel with the easterly line of Private Claim 563, then defendants are not guilty: the *locus in quo* lying between these two projected lines, and within the triangle formed by them and the thread of the river."

Upon facts as stipulated the Court found the following conclusions of law:

"*First.* The said parties are the owners of the land under the river, in front of and adjoining their Private Claims respectively, to the thread of the stream, and entitled to every beneficial use of the same, subject to the public easement in the same.

*Second.* In projecting the dividing line between these two Private Claims, it does not extend into the river in the same direction as it runs for three chains twenty-eight links before it reaches the shore; but in this case the grants under which each party holds, being silent upon this question, should be extended, as near as possible, at right angles with the borders of the river and parallel with the other side line, so as to give each riparian proprietor, as near as possible, the same width at the thread that he has on the border of the stream."

The Court found the defendants not guilty; the case is settled, signed and certified to this Court in accordance with the statute, at the request of plaintiff.

*D. C. Holbrook,* for plaintiff.

*H. M. & W. E. Cheever,* for defendant.

CLARK v. CAMPAU ET AL.

CAMPBELL J.

Clark and Campau being adjoining land owners on Detroit River, the former claims title to certain land under water extending diagonally across Campau's front, upon the ground that the rights in the water are to be determined by the direction of the boundaries on land. The division line between the two runs in such a direction that Clark's land widens, and Campau's narrows as the lots approach the shore, and Clark claims that the lines should be extended into the water in the same direction at which they strike the shore line.

The Court below ruled in substance that the rights in the water were not in any way dependent upon the direction of the lines on land, but that the lines from the shore should be run, as near as may be, perpendicular to the course of the stream, which at this point is straight, and at right angles with the general direction of the farm lines, and parallel with the shore. We think the ruling was correct.

The right to land under water, extending from the shore toward the centre or thread of a stream has always been deemed as appurtenant to the shore itself. It has no reference whatever to the extent of the riparian owner's possessions back from the shore, and is the same whether those possessions consist of a deep parcel or a mere strip of shore. And this right to the covered lands in front has always been held to exclude any adjacent claimant from intercepting in any way the full extent indicated by the width at the shore, without reference to whether the tract approaches the shore at right angles or diagonally. Where the stream is straight, the water front will be bounded by lines drawn at right angles with the thread of the stream, protracted until they reach the ends of the shore line. Where the stream curves the same principle applies, and the lines running from the shore would converge or separate, according as the land lay within or without the curve.

In all the cases where the ownership of submerged land or of alluvial increments, appurtenant to riparian ownership has come in question, the only elements which have ever been considered by the Courts have been the shore lines and the central line or thread of the stream, and the partition among adjoining owners has been made with reference to these, but never with any reference whatever to the direction of the boundaries or the extent of the domain on the uplands. The aim in every instance has been to secure to each owner such share as was indicated by his shore line, and not by his lands back of it.

The following cases exemplify the method resorted to, in making allotments among riparian owners, both on rivers and on other waters, in none of which has any regard been paid to the lines on land.—*Emerson v. Taylor, 9 Greenleaf R. 42 ; Deerfield v. Arms, 17 Pick. R. 41 ; Rust v. Boston Mill Corp., 6 Pick. R. 158 ; Sparhawk v Bullard, 1 Metc. R. 95 ; Knight v. Wilder, 2 Cush. R. 199 ; Ipswich Pet'rs, 13 Pick. R. 431 ; Jones v. Johnston, 18 How. R. 150 ; and Johnston v. Jones, 1 Black Rep. 209 ; Banks v. Ogden, 2 Wallace R. 57 ; O'Donnell v. Kelsey, 10 N. Y. 412.*

In *Saulet v. Shepherd, 4 Wall., 502,* the principle which recognizes the shore line, and not the back lands as governing, is recognized and enforced as it had been in *Johnston v. Jones* and *Banks v. Ogden.* And it in fact lies at the foundation of all the decisions on riparian rights—See also *Jones v. Soulard, 24 How. R. 41 ; Seneca Nation v. Knight, 23 N. Y. 498 ; Steamer Magnolia v. Marshall, 39 Mississippi R.,* and the cases referred to in our previous decisions, *Lorman v. Benson* and *Rice v. Ruddiman.*

The judgment below is affirmed with costs.

The other Justices concurred.