ST. HELEN SHOOTING CLUB *v.* BARBER.

150   571
154   ³668

1. License—Construction—Revocability.

   An agreement by which defendants for a valuable consideration were sold a platted lot, with the privilege of shooting over other lands of their vendor, was not a mere license, revocable at will, but a contract of which specific performance might be decreed.

2. Corporations—Contracts—Ultra Vires—Estoppel.

   Where a corporation solicited a contract, received, accepted, and used the consideration, and permitted the other contracting party to exercise the privileges bargained for without protest, it, and also its grantee, is estopped to deny its authority to enter into the contract.

3. Same—Notice to Agent—Sufficiency.

   Where the agent of a corporation acquiring shooting rights in certain lands had notice that defendants had previously been granted similar rights by the owner of the lands, but, notwithstanding such notice, limited his inquiries to the only person interested in concealing from him the extent of defendants' rights, and relied upon his statements and the public records, the corporation cannot claim, as against defendants, the rights of a bona fide purchaser.

Appeal from Roscommon; Sharpe, J. Submitted January 8, 1907. (Docket No 1.) Decided January 6, 1908.

Bill by the St. Helen Shooting club against Anson A. Barber and others to enjoin the entering, trespassing, and shooting game upon complainant's property. From a decree dismissing the bill, complainant appeals. Affirmed.

*Willis Baldwin* and *E. O. Grosvenor*, for complainant.

*Geer, Williams & Halpin*, for defendants.

McAlvay, J. This is an appeal by complainant from

a decree entered in the circuit court for Roscommon county, in chancery, dismissing its bill of complaint filed for the purpose of enjoining defendants from entering, trespassing, and shooting game and wild fowl upon the waters and marshes of St. Helen Lakes in said county. Complainant is the lessee in perpetuity of the exclusive rights to said privileges by written lease from the St. Helen Development Company, the owner of the fee to the lands surrounding said lakes. Defendants claim prior rights under a certain writing made by said Development Company to them more than two years prior to said leasing, and of which rights although said writing was not recorded they claim complainant had sufficient notice to defeat its claim as a bona fide purchaser for a valuable consideration without notice. The following is the writing relied upon by defendants:

"ST. HELEN, MICH., September 26th, 1902.

"The St. Helen Development Co. agrees with Chauncey Tibbits, Charles Holenbeck, Joseph Edmunds, William Deeter, A. G. Barber and A. A. Barber, all of Lapeer, Mich., and all members of the St. Helen Club as follows:

"That so long as the said members observe the rules and regulations of the club, a camp and shanty shall be maintained for them at the point known as Camp seven, which is located on sec. 30, 23–1. The said St Helen Co. will build the shanty for the said parties, and rent it to them at a cost this duck season of $10, and thereafter at $5 per season, the said parties having the right to store their boats and camp equippage therein, which the St. Helen Development Co. agrees to protect with all the diligence commensurate with the cost of rental. Or the boats and equippage may be stored at the club house. The St. Helen Development Co. agrees that at any time the ground at Camp seven is platted into lots by them, one lot shall be given to the said parties in exchange for one of the lots to be deeded them around the St. Helen Club House. The St. Helen Development Co. further agrees that the yearly dues of the St. Helen Club shall never be more than $3 per year to each of the members above named, and as long as these dues are paid and the rules and regulations observed, the said members shall enjoy the privileges of fishing and shooting as far as in

the power of the St. Helen Development Co. lies, and shall also have the privilege of passing over the lands of the St. Helen Development Co. to reach Camp seven.

"St. Helen Development Co.,

"By John Carter, President."

The circumstances which led up to the execution of this agreement and the facts of the case necessary to an intelligent consideration of the case are as follows. The St. Helen Development Company, a corporation, and the common grantor of the parties to this suit, on September 13, 1902, sent to defendant Barber the following letter:

"St. Helen, Mich., September 13th, 1902.

"Mr. A. A. Barber,

"Lapeer, Mich.

"*Dear Sir:* We are informed that you are one of sportsmen who are in the habit of coming to St. Helen for the duck shooting. In this connection we beg to inform you that our company has purchased all the land surrounding the lake and for several miles each way from it, 65,000 acres in all. Desiring to protect the sport as long as we can, we have organized the St. Helen Club whose members will be accorded all the privileges of the shooting and fishing. The membership being limited to one hundred members is rapidly filling up, and if you desire to enjoy the sport with us this fall you are cordially invited to join the club.

"A club house is being built which will be completed by Oct. 1st. It is standing in a beautiful situation, with a view of First Lake. One hundred cottage lots are laid out around the club house, each member being entitled to one, the choice of which will be decided by lot. The cost of membership is $25, lot included. Members may either provide for themselves or may stay at the club house where board and room may be secured at the rate of one dollar per day. Members may camp upon their lot at the club grounds or upon any other site they may select. The shooting, however, will be controlled by rules adopted by the club.

"The club owns a twenty-five foot naphtha launch and boats will be provided for members who do not own one. The comfort of the members will be looked after in every possible way, which fact will be appreciated by all who have been here previously for the shooting.

"Should you desire to become a member, send draft to the St. Helen Development Co. and a membership ticket will be forwarded to you. If you have friends in your town who are interested in sport, we would be pleased to hear from them also, as we wish to know just how many to provide for this season. Shells will be handled at the club, so that should you come, you need not be loaded down in bringing them.

"Trusting to hear from you in a few days, we beg to remain,

"Yours truly,
"ST. HELEN DEVELOPMENT CO.,
"By F. G. CLARK, Secretary."

That Mr. Barber replied to this proposition on September 19, is shown by the following letter.

"ST. HELEN, MICH., September 21, 1902.
"A. A. BARBER,
"Lapeer, Mich.

"Dear Sir: Your letter of the 19th received and contents noted, and will say that the place where Jno. Troup camped is out of the ground laid off for club lots. Therefore we cannot grant your request. The lots for club members would make a desirable place for tent, and as to annual dues our club has none, excepting three dollars per year to keep up lots and have them uniform. Of course our rules will comply with the game law.

"Hoping you will become a member under these conditions, I beg to remain,    Yours resp.
"ST. HELEN DEVELOPMENT CO.,
"F. G. CLARK, Sec."

Mr. Barber, who lives at Lapeer, Michigan, then went to St. Helen to meet Mr. John Carter, president of the Development Company, with reference to the transaction. Mr. Carter was not there and an appointment was made by telegraph to meet him at the Frazer House in Bay City, where the agreement, Exhibit No. 1, was drawn up and signed by Carter on behalf of said company, and delivered to defendant Barber, who acted for himself and the others named therein. All of which persons except A. G. Barber are defendants in this suit. Mr. Barber paid Carter $50 at the time, and three days later, on September 29,

1902, sent a draft for $100, the balance of the considera-
tion, payable to the St. Helen Development Company,
which was received, indorsed, and paid to it. This was
full payment for the six persons named in the agreement.
Cards of membership were issued to Barber and to each
of the other defendants. These cards read as follows:

"ST. HELEN CLUB, St. Helen, Mich.
  "A. A. Barber is a member of the St. Helen Club, of-
St. Helen, Mich.
                       "F. G. CLARK, Secretary.
  "This membership entitled the holder to all the priv-
ileges of the club house and other privileges to be
granted by the St. Helen Development Co. The club
house will be maintained by the St. Helen Development
Co. for the use of members of the St. Helen Club and
their friends, and will be governed by rules adopted by
the board of directors."

President Carter afterwards wrote defendant Barber
the following letter modifying the agreement of Septem-
ber 26th:

                "BAY CITY, MICH., October 2, 1902.
"A. A. BARBER, Esq.,
         "Lapeer, Mich.
  "*Dear Sir:* You will remember that I told you that
I could not promise you Camp eight for your party, so you
settled on Camp seven. Circumstances have transpired
since then that enables me to offer you Camp eight.
Other parties are anxious for it, but I decided to give you
the refusal. Your contract could stand in all other par-
ticulars, simply substituting eight for seven. Should you
desire to change let me know by Saturday, sending your
answer to us at Beaver Lake post office. We will then
hold the camp for you and fix it up as comfortable as we
can.
                       "Yours truly,
                          "JOHN CARTER."

In 1902 a large painted sign was put up near the depot
at St. Helen station, reading substantially as follows,
"Positively no shooting on St. Helen Lake or these
grounds except by members of St. Helen Club." This
depot is not a great distance from the lake.

The Development Company built the club house mentioned in the agreement with the money received from defendants and others. Its teams hauled defendants' boats and baggage to the lake, and it sold camp supplies to them. Defendants' boats were stored under the club house. The shanty spoken of was not built for defendants but they were given the use of the building called Camp 8.

Claiming the right to hunt and shoot wild fowl upon these lakes and marshes, and all other rights granted by the agreement made with the St. Helen Development Company, in consideration of the money paid therefor, defendants have continued each season since to hunt and shoot on these waters, and to camp on these premises.

No St. Helen Club was in fact ever organized. The contract was not recorded. Members of complainant club first saw the writing after this suit was brought. In August, 1904, defendant Barber received from the Development Company the following notice:

"ST. HELEN, MICHIGAN, August 25, 1904.

"*Dear Sir:* You are hereby notified that all the shooting privileges of Lake St. Helen have been leased in perpetuity to the St. Helen Shooting Club, organized under the laws of the State of Michigan.

"As a member of the St. Helen Club you are entitled to the privileges of the Club House, but you will not be allowed to shoot upon the lake, as this will be under the jurisdiction of the new club.

"If this ruling is not perfectly satisfactory to you, perhaps you may desire to resell your membership in the St. Helen Club to us. If so will you kindly let us hear from you, fixing price upon your membership.

"Yours truly,

"ST. HELEN DEVELOPMENT CO.,

"Per F. G. CLARK, Sec'y."

Defendants were warned off the lake in the fall of 1904 by Clark, secretary of the Development Company, who represented complainant. Before the organization of complainant club some of those who were actively interested in it had been acquainted with these lakes and for

several years had hunted and fished there.   Most of them resided at Monroe, Mich.   One of their number, Mr. Rauch, acting for himself and six others, all contributing equally, purchased the tax titles from the State of Michigan on these and other lands for $550.   He began proceedings for writs of assistance against the Development Company.   Negotiations followed, and the organization of the complainant club was brought about.   Rauch deeded his interest to the Development Company, and it gave complainant the lease under which it now claims. This in terms is a lease in perpetuity giving complainant exclusive rights to hunt and shoot upon these waters and submerged lands.

Messrs. Carter and Clark, president and secretary of the Development Company, took one-half of the shares of stock in complainant club.   The Rauch deed to the Development Company, the lease from it to complainant, and the organization of complainant club were contemporaneous.

The important and determining question in this case is the construction this court will give to this written agreement.   The claim of the complainant is that this writing is simply a license revocable at the will of the licensor; that it obtained its lease in good faith for a valuable consideration and without notice of defendants' claim to rights in the premises.   On the part of defendants it is urged that this writing and other writings in evidence and the testimony disclosed in the record shows that they acquired an interest in this property for a valuable consideration.   That they have continued in the possession and enjoyment of such interest since its acquirement, of which possession and exercise of rights complainant had notice. This agreement requires extrinsic evidence for its complete understanding.   When read in connection with the first letter written to defendant Barber and the other evidence bearing upon it, the fact appears that each of these parties defendant was buying one of the lots already platted and

paying cash therefor as well as for the privileges of hunting and shooting. There is no testimony in the case contradicting this fact.

Taking into consideration all of the facts, we are not left in doubt as to the meaning and intent of the parties. The interest acquired by defendants, they having fully performed on their part, was such that, as between the parties, specific performance would be decreed against the Development Company. We therefore hold that this interest was not a mere license revocable at the pleasure of the Development Company.

Complainant claims that no authority is shown for the execution of this agreement by the Development Company. The record shows that it solicited the contract, received and accepted the money of defendants and, as the record shows, of many others, built the club house, as may be inferred from the record, with this money; permitted defendants to enter its premises and exercise the rights granted; stored and cared for their property and has never raised any question as to the validity of the contract. This company would be estopped from denying its authority and its grantees cannot question it.

As to the notice to complainant of the rights claimed by defendants it will be unnecessary specifically to point out and quote the testimony supporting defendants' contention. Messrs. Grosvenor and Baldwin were the attorneys for the organizers of the club who lived at Monroe and had in charge the negotiations of purchase and the matter of title, and it was left to them to see that it was all right. The trespass sign was seen by Mr. Grosvenor and the matter of the membership cards was discussed by him with President Carter the year the club house was built, 1902. He had heard that lots were to be deeded or given to the card holders, and had asked Carter what rights had been granted to them. He saw many of these cards and Carter told him where these lots were located. When complainant club was organized the matter was discussed with Carter. Rauch stated that Carter told him that he

would see these parties who held passes and fix it up with them. Grosvenor testified that Carter asked him what "was the thing for him to do with these card holders;" that he knew those who received cards paid cash for them and that the club house was expected to be built from these funds. He knew some of defendants and that they were interested. He had seen some of them shooting on the premises before and after the organization of the clubs. Carter is the only man the attorneys talked with in this relation, and as the court in his opinion says, "He was the only man interested in concealing the facts as to the matter about which the inquiry was made."

There is ample testimony in the case to warrant the trial court in finding that complainant had sufficient to put a prudent, honest man upon his inquiry. *Converse* v. *Blumrich*, 14 Mich. 109, 120; *Jackson, etc., R. Co.* v. *Davison*, 65 Mich. 416; 2 Cook on Corporations (5th Ed.), § 727.

The attorneys relied upon Carter's statements and the records of Roscommon county. It appears from the testimony of complainant's attorneys and other members that this question of the rights of any one else to shoot on these lakes was considered to be the important one, yet, with the indications all pointing to some rights in defendants and others, information easily ascertainable from those who could furnish it was not sought. *Hains* v. *Hains*, 69 Mich. 587.

The decree of the circuit court is affirmed, with costs.

Grant, C. J., and Blair and Ostrander, JJ., concurred. Hooker, J., concurred in the result.