ST. HELEN SHOOTING CLUB *v.* MOGLE.

1. WATERS AND WATERCOURSES—BOUNDARIES—RIPARIAN RIGHTS—OWNERSHIP OF LAND UNDER LAKE.

   The owner of all of the land bordering upon a lake is the owner of the land under the lake.[1]

2. GAME—OWNER HAS EXCLUSIVE HUNTING RIGHTS.

   The owner of the shore and subaqueous lands of a lake has the exclusive right of hunting on the shores and waters.[2]

3. SAME—HUNTING IS AN INCORPOREAL RIGHT—MAY BE SEGREGATED FROM THE FEE—PROFIT A PRENDRE.

   The right of hunting on premises is an incorporeal right, growing out of real estate, which, by the common law, was conveyed by grant, inasmuch as livery of seisin could not be made of it, and this right has been termed a grant of a *"profit a prendre"*—some right growing out of the

[1]Waters, 40 Cyc. p. 631; [2]Game, 27 C. J. § 4.
Nature and extent of right created by private grant of hunting or fishing privileges, see note in 40 L. R. A. (N. S.) 299.
Reservation in grant of land of right to hunt and fish with like right to grantee, as limiting the right of the grantee to actual owners of the land, see note in 32 A. L. R. 1533.

soil—which may be segregated from the fee of the land and conveyed in gross to one who has no interest and ownership in the fee, and, when so conveyed in gross, it is assignable and inheritable.[3]

4. EASEMENTS — NOT NECESSARILY APPURTENANT TO DOMINANT ESTATE.

A profit in gross may be created in fee without being appurtenant to a dominant estate.[4]

5. CONTRACTS—VOID IF AGAINST PUBLIC POLICY.

Although it is not the policy of the law to unnecessarily restrict the right of persons to contract, yet, when the tendency of a contract, or a class of contracts, is manifestly injurious to the public interest, the court will avoid them, and, in determining what is public policy, must advert to the Constitution, statutes, and judicial proceedings.[5]

6. GAME—CONTRACT GRANTING EXCLUSIVE HUNTING RIGHTS SEGREGATED FROM LAND NOT AGAINST PUBLIC POLICY.

In view of the fact that the State by statute permits hunting companies to incorporate (2 Comp. Laws 1915, § 9054 *et seq.*) and hold lands for game preserves (Act No. 207, Pub. Acts 1923), and that the attention of the court has not been called to any holding of this court or any other court that a grant in writing of the exclusive right of hunting, segregated from the land, is against public policy, such contract is *held*, not void on the ground of public policy.[6]

7. CONTRACTS—UNILATERAL—VALIDITY OF CONTRACT MAY NOT BE QUESTIONED AFTER ACCEPTANCE FOR 20 YEARS.

Where a writing conveying the exclusive right of hunting has been accepted by the grantee and the consideration paid for upwards of 20 years, it is too late to raise the question that the contract is unilateral because it is unsigned by the grantee who has covenants to perform thereunder.[7]

8. SAME—UNIMPORTANT WHETHER CONTRACT IS DEED OR LEASE.

As affecting the rights of the parties in the instant case, it is unimportant whether the contract involved is a deed or a lease.[8]

Appeal from Roscommon; Smith (Guy E.), J. Sub-

[3]Game, 27 C. J. § 5; [4]Easements, 19 C. J. §§ 10, 11, 12; [5]Contracts, 13 C. J. §§ 360, 362; [6]Game, 27 C. J. § 5; [7]Contracts, 13 C. J. § 180; [8]Easements, 19 C. J. § 12.

mitted June 4, 1925.    (Docket No. 35.)    Decided March 20, 1926.

Bill by the St. Helen Shooting Club against William H. Mogle and another to enjoin an infringement of an exclusive hunting privilege.    From a decree dismissing the bill plaintiff appeals.    Reversed, and decree entered for plaintiff.

*Willis Baldwin, W. Clarence Smith,* and *Theo. D. Halpin,* for plaintiff.

*Frank S. Pratt,* for defendants.

BIRD, C. J.    In 1904 the St. Helen Development Company was the owner in fee of all the land bordering on Lake St. Helen, except certain rights which were subsequently acquired.    In that year it conveyed the exclusive hunting rights to the plaintiff.    The conveyance will be found in the margin.[1]    An additional 12½ acres of land bordering on the lake have been conveyed to the club.    Upon this parcel a club house and cottages have been erected for the convenience of its members, and the club is being maintained and regulated by rules and enjoyed by the members thereof. The defendant Mogle purchased in fee a portion of the land bordering on the lake, subject to the exclusive

[1]This indenture, made this 30th day of March, 1904, between the St. Helen Development Company of St. Helen, Roscommon county, Michigan, a corporation organized under the laws of the State of Michigan, party of the first part, and The St. Helen Shooting Club, a corporation organized under the laws of the State of Michigan, party of the second part.

Witnesseth, For and in consideration of the agreements hereinafter set forth, the said party of the first part does hereby let, lease, grant, demise and convey to the said party of the second part, and its assigns, forever, the exclusive right of hunting game and wild fowl in and upon the lakes and marsh of and on the following described premises in township No. twenty-three. (23) north of range one (1) west, in the county of Ros-

hunting privileges theretofore granted to the plaintiff. He maintains a summer resort there.   Defendant Winters is an employee of Mogle.   The plaintiff filed this bill to restrain the defendant Mogle from infringing its hunting rights, it being claimed that defendant Mogle had not only himself infringed its exclusive hunting privilege, but had encouraged and enabled others to do so, by fitting up boats with blinds, and renting them to the public to enable it to enjoy the privileges which the plaintiff claims belong exclusively to the club.   The testimony and discussion took a wide range in the trial court.   The chancellor concluded that such a lease or conveyance was void on the ground of public policy, and dismissed the bill.   Plaintiff appeals.

After a somewhat extended consideration of the case, we are persuaded that there are but two important questions which need to be discussed and decided, namely:

(1) Whether the exclusive hunting privilege can be separated from the fee and conveyed by grant to another.

(2) Whether such a conveyance is against public policy, and, therefore, void.

1. It appears that the St. Helen Development Company, prior to the conveyance to plaintiff, was the

common, Michigan, to-wit: Lots 1, 2, 3, 4, 5, 6, 7, 8 and 9 of section 16; lots 1, 2, 3, 4, 5, 6 and 7 of section 19; lots 1, 2, 3, 4, 5, 6 and 7 of section 20; lots 1, 2, and 3 of section 21; lots 1 and 2 of section 15; lots 1, 2, 3 and 4 of section 22; lots 1, 2 and 3 of section 28; lots 1, 2, 3, 4 and 5 of section 29; lots 1, 2, 3, 4, 5, 6 and 7 of section 30.

Also the following described premises in township twenty-three (23) north of range two (2) west in said county; lots 1, 2, 5, 6 and 7 of section 24; hereby intending to include all the water surface and marsh of the three lakes known as St. Helen lake, and the marsh and water of the south branch of the AuSable river from St. Helen lake to the north line of said section 16. First party warrants that it has good right and title to the

owner in fee of all the land bordering upon the lake.
If plaintiff were such owner we think it follows that
it ·was the owner of the land under the lake.        This
court has decided that question so many times that
we must regard that question as settled.        *Grand
Rapids Ice & Coal Co.* v. *South Grand Rapids Ice Co.*,
102 Mich. 227 (25 L. R. A. 815, 47 Am. St. Rep. 516) ;
*Johnson* v. *Burghorn,* 212 Mich. 19 (11 A. L. R. 234) ;
*Lorman* v. *Benson,* 8 Mich. 18 (77 Am. Dec. 435) ;
*Clark* v. *Campau,* 19 Mich. 325; *Bay City Gas Light
Co.* v. *Industrial Works,* 28 Mich. 182; *Fletcher* v.
*Boom Co.,* 51 Mich. 277; *Sterling* v. *Jackson,* 69 Mich.
488 (13 Am. St. Rep. 405) ; *Campau Realty Co.* v.
*City of Detroit,* 162 Mich. 243 (139 Am. St. Rep. 555) ;
*Fuller* v. *Bilz,* 161 Mich. 589.

If the St. Helen Development Company was the
owner of the shore and subaqueous lands, did it have
the exclusive right of hunting on the shores and
waters?        We think this question is equally well
settled by our authorities.        There could be no other
consistent conclusion.        If it could not prevent tres-
passes on the shore in reaching the lake, its title to the
land in fee simple would be of little value.        But as
we have said this court has, on several occasions, held
the right of the owner to be exclusive in the hunting
privileges.        *Ainsworth* v. *Munoskong Hunting &*

said premises and that it will warrant and defend this con-
veyance against all lawful claims whatsoever, excepting the un-
divided one-half of said lot two (2) of section twenty-eight (28);
should title to said lot be acquired by or for first party, it shall
enure to the benefit of said second party.

This lease includes the right to use the shore of the lakes,
river ·or marsh for landing purposes, and for the purpose of
building blinds or hides for hunting purposes, and of maintain-
ing them here.

Except as herein specified, this lease shall not cover or in-
clude the uplands of said description, nor any rights to the timber
on such lands, nor shall this lease be construed as debarring·
second party from making any and all improvements of said land

*Fishing Club,* 159 Mich. 61; *Hall* v. *Alford,* 114 Mich. 165 (38 L. R. A. 205) ; *Johnson* v. *Burghorn, supra; Sewers* v. *Hacklander,* 219 Mich. 143; *Sterling* v. *Jackson, supra; Brown* v. *Parker,* 127 Mich. 390.

If the St. Helen Development Company was the owner of the shore and subaqueous lands and had an exclusive right of hunting thereon, may it separate this right from the fee of the land and convey it by grant to another?   The right of hunting on premises is an incorporeal right, growing out of real estate, which, by the common law, was conveyed by grant, inasmuch as livery of seisin could not be made of it. This right has been termed by law writers a grant of a *"profit a prendre."*   A *"profit a prendre"* is some right growing out of the soil.   It is somewhat difficult to understand how, where one shoots a duck in the air while over the water, he is taking something from the soil, but, undoubtedly, the application of that term was made to this right so that it would become, in law, an incorporeal hereditament and thereby pass by grant and not become a mere license.   But whatever inconsistencies appear, it is settled by all the authorities worth heeding that this right may be segregated from the fee of the land and conveyed in gross to one who has no interest and ownership in the fee, and

and lake consistent with its future development or commercial utility.

This lease shall give the second party and its assigns and representatives the full and exclusive right to all of the shooting and hunting privileges on the premises so leased; and said second party, in its own name or in the name of the owner of the fee of said leased premises, at its election, but at its own expense, may protect and police said leased premises, and may bring any action at law or in equity that it may deem necessary to protect the rights herein granted, either against trespassers, intruders or any other persons.

It is further expressly agreed that the first party or its assigns, or representatives, shall not use said leased premises in any way to interfere with the hunting of wild fowl and game thereon

234—Mich.—5.

when so conveyed in gross it is assignable and inheritable.

The rule laid down by 12 R. C. L. p. 689 is as follows:

"Though one person has no natural right to hunt on the premises of another, it is clear that a right to do so may be acquired by a grant from the owner. Or the owner can convey his premises and reserve to himself the hunting and fowling rights thereon. An owner of lands may convey exclusive hunting rights thereon to others so as to bar himself from hunting on his own premises. He may make a lease of the hunting privileges giving the lessee the exclusive right to kill game or water fowl on the premises, and at the same time reserve to himself the pasturage rights on the premises. The right to hunt on another's premises is not a mere license, but is an interest in the real estate in the nature of an incorporeal hereditament, and as such it is within the statute of frauds and requires a writing for its creation. Nor is the right of one person to hunt or fowl on premises owned and in the possession of another an easement, for, strictly speaking, an easement implies that the owner thereof shall take no profit from the soil. The right is more properly termed a *profit a prendre*. Unless the grant otherwise determines the rights of the parties, the owner of the hunting privileges may assign his rights to another, but he cannot give a pass or permit to another so as to allow the latter to exercise hunting privileges on the premises. In the absence of anything to the contrary, in a grant of hunting or fowling privileges, the right to hunt and fowl is limited to the

during the open or hunting season, and that first party shall so regulate its boating and fishing upon said waters so as not to interfere with the privileges herein granted.

The second party shall have the right to fish with hook and line upon said waters, but not an exclusive right; first party shall not at any time take perch, bass, pike or pickerel from said waters by the use of nets of any kind, and shall not set or use nets of any kind during the open hunting season. Said first party shall not plant or permit to be planted or placed in said lakes or river any fish known as carp.

The first party and its assigns shall pay all taxes and assess-

usual and reasonable methods generally used in the vicinity at the time of the execution of the grant, and the grantor is under no obligation to maintain a preserve for the pleasure and sport of the grantee, but the latter must exercise the right in the condition it may be at the time of the grant. Thus, if the owner of land conveys to others the right to hunt water fowl upon the waters thereof, he is not liable for depreciation in the value of such fowling rights from his acts in clearing and draining the land, provided he does so in good faith for the purpose of improving it."

The rule laid down by Corpus Juris is similar:

"The right of hunting on another's lands or waters may be acquired by a grant or lease from the owner, either with or without the soil, and with such restrictions or limitations as the owner may see fit to impose. * * * The grantee of such a right has an interest in the soil, and, although he may sell or assign his right, he cannot issue permits to others to exercise the privilege granted." 27 C. J. p. 943.

Thompson in his work on Real Property takes the same view:

"A grant of a right to take and kill game on lands or waters belonging to the grantor is a grant of an interest in the land itself within the statute of frauds. It is a grant of a *profit a prendre.* The property in animals *feræ naturæ* while they are on the soil belongs to the owner of the soil and he may grant a right to others to come and take them, by a grant of

ments of any kind or nature that may be levied against and upon said premises, perpetually.

The said second party shall pay to the first party, on November 1st of each year the sum of $200, on the production by the first party of the tax receipt of the preceding year upon the above described premises and shall be under no obligation to pay said sum of $200 until such taxes are paid. In case of the nonpayment of such taxes, the second party have the right to pay the same out of the said $200 or so far as the same shall apply.

It is expressly agreed that should said premises be offered for sale (for) the delinquent taxes, the second party, after applying the said sum of $200 as far as the same will go, shall have the

hunting, shooting, fowling and so forth.     That right may be granted by the owner of the fee simple and such a grant is a license of a *profit a prendre*.     A privilege to shoot, take and kill wild fowls on the lakes and waters of the grantor is strictly confined to the lakes and waters and cannot be exercised upon the grantor's lands.     A right to hunt, fish and fowl granted to one, his heirs and assigns, is a *profit a prendre* in gross, and may be exercised by servants of the grantee.   *   *   *     The right so acquired is good against all the world and can be maintained even against the owner of the soil."     1 Thompson on Real Property, § 234.

"A *profit a prendre* involves primarily a power to acquire, by severance or removal from another's land, some thing or things previously constituting a part of the land, or appertaining thereto, the holder of the *profit a prendre* having, as an integral part thereof, rights against the members of the community generally that they shall not interfere with the exercise or enjoyment of the power.     As instances of *profits a prendre* may be mentioned rights to take from another's land, and so acquire as one's own, wood, herbage, or coal or other minerals, this latter being at the present day the most important class of such rights.     Likewise, one may have the right to kill and take as his own game on another's land, fish in waters thereon, seaweed cast thereon, or soil, sand and gravel therein.     A right to take ice has been regarded as a

same right to bid in said premises at (as) any stranger, and shall have the same right to acquire a tax title thereon as though it was not interested in the premises.

It is further agreed that any member of the second party club shall have a right to acquire such premises for a tax title upon any of said premises the same as a stranger.

In consideration of the agreements aforesaid, also, the said first party does hereby let, lease, remise, grant and convey to the said second party and its assigns, in perpetuity the north twelve and one-half (12½) acres of said lot three (3) of said section twenty-eight (28) above, for the purpose of erecting buildings and boat houses and other conveniences thereon, and building desired landing places and docks for the convenience of the members.

Said premises shall be accessible both by land and water, and

*profit a prendre.*"    2 Tiffany, Real Property (2d. Ed.), § 381.

"A *profit a prendre* in gross is ordinarily regarded as freely transferable and inheritable. A *profit a prendre* appurtenant passes *prima facie* upon a transfer of the dominant tenement." 2 Tiffany, Real Property (2d Ed.), § 382.

The case of *Council* v. *Sanderlin*, 183 N. C. 253 (111 S. E. 365, 32 A. L. R. 1527), involves this question, and it was there said:

"The right of hunting or fowling on another's lands or water may be acquired by grant or lease from the owner, either with or without the soil, and with such restrictions or limitations as the owner may see fit to impose. This right, being a right of profit in the land, passes by grant or lease of the land unless expressly reserved."

The case of *Bingham* v. *Salene*, 15 Or. 208 (14 Pac. 523, 3 Am. St. Rep. 152), arose under a very similar grant. In discussing what interest passed in the estate, it was said, in part:

"Here there is a grant of a sole and exclusive right and privilege to the plaintiffs, their heirs and assigns, forever, to shoot, take and kill such game on the lakes and waters upon the lands of the grantors, and which right, in *Webber* v. *Lee*, L. R. 9 Q. B. Div. 315, was held to be a grant of an interest in land, and within the statute of frauds. This right then to take something out of the soil, or from the land of another, which

shall not be used for any commercial or business purposes, nor for the sale or vending of any intoxicating liquors.

The parties hereto do not consider the premises conveyed as suitable for agricultural purposes, but the intent of this article is that should said premises (consisting of a sand bank and marsh) ever be found suitable for agricultural purposes, then this conveyance, in such case, shall be deemed an absolute conveyance of the fee of said north twelve and one-half (12½) acres of said lot three (3) subject to the limitations as to use as above described.

In Witness Whereof, the said party of the first part had (has)

includes shooting, hunting and fishing, is a *profit a prendre*, and Mr. Washburn says 'is so far of the character of an estate or interest in the land itself, that, if granted to one in gross it is treated as an estate and may, therefore, be one for life or for inheritance.' Washburn on Easements, 9.    It is manifest, therefore, that the contention that the deed only created a license revocable at the pleasure of the defendants cannot be sustained."

Another Oregon case is *Isherwood* v. *Salene*, 61 Or. 572 (123 Pac. 49, 40 L. R. A. [N. S.] 299).    Appended to this case is an interesting note in Ann. Cas. 1914B, at page 545.

Another case of interest which discusses this question with like result is *Smith* v. *O'Dell*, 234 N. Y. 267 (137 N. E. 325).

A case from our own court, wherein the plaintiff in this case was plaintiff, and one Barber was defendant, reported in 150 Mich. 571, will disclose the view of this court.

The cases, both in United States and in England, have recognized the doctrine that a profit in gross may be created in fee without being appurtenant to a dominant estate.    Some of the very early cases are 1 And. 307, Godbolt, 17.

Some of the later English cases are *Welcome* v. *Upton*, 6 M. & W. 536; *Fitzgerald* v. *Firbank* (1897), 2 Ch. 96.

---

hereunto set its hand and seal the day and year first above written.

THE ST. HELEN DEVELOPMENT CO.,
By JOHN CARTER,
President,
FRANKLIN G. CLARK,
Secretary.

Signed, sealed and delivered
in the presence of
WM. HAMILTON,
DELLA J. CLARK.

Other cases in United States are *Caldwell* v. *Fulton,* 31 Pa. St. 475 (72 Am. Dec. 760) ; *Johnstown Iron Co.* v. *Cambria Iron Co.,* 32 Pa. St. 241 (72 Am. Dec. 783) ; *Leyman* v. *Abeel,* 16 Johns. (N. Y.) 30; *Saratoga State Waters Corp.* v. *Pratt,* 227 N. Y. 429 (125 N. E. 834) ; *Clement* v. *Rutland Country Club,* 94 Vt. 63 (108 Atl. 843) ; 3 Leake's Uses and Profits in Land, 78.

If this were a question of first impression in this court the writer would be in favor of holding that an exclusive hunting privilege could not be segregated from the fee of the land, except by a license revocable at the death of either party, or when the fee of the land was alienated.   This rule would keep the exclusive right of hunting and the fee of the land together.   We have, however, gone too far the other way to revert to such a holding without a legislative enactment.   This holding, undoubtedly, deprives, to some extent, the man of modest means of the pleasure of hunting, which is regarded by some as great sport, but he will suffer no more in this respect than in other respects where he lacks the purchase price.

2. Is such a conveyance against public policy?   It is not the policy of the law to unnecessarily restrict the right of persons to contract.   When, however, the tendency of a contract, or a class of contracts, is manifestly injurious to the public interest, the court will avoid them.   In determining what is public policy

STATE OF MICHIGAN, &rbrace; ss.
County of Roscommon. &rbrace;

On this 30th day of March, 1924, before me appeared John Carter and Franklin G. Clark, to me personally known, who being by me each duly sworn did say that said Carter is the president of the St. Helen Development Company and said Clark is the secretary of said company, and that the seal affixed to said instrument is the corporate seal of said corporation and that instrument was signed and sealed in behalf of said corporation by its board of directors, and said John Carter and Franklin G.

we must advert to the Constitution, statutes and judicial proceedings.     9 Cyc. p. 482, 13 C. J. p. 426.

In the present case the St. Helen Development Company was the owner in fee of these premises.     As such owner it had the exclusive hunting privilege.     It segregated therefrom the exclusive hunting rights and conveyed them to plaintiff, and the courts are nearly unanimous in saying that in so doing it simply exercised a legal right.     We can see nothing in the act that has a tendency to be inimical to the public interest.     While this holding somewhat restricts the hunting range of the average hunter, it simply gives to one the right to control and alienate what he owns. The State permits hunting companies to incorporate and exist under Act No. 171, Pub. Acts 1903 (2 Comp. Laws 1915, § 9054 *et seq.*).     The State has also restricted the rights of such companies to hold more than 15,000 acres of land in one place for game preserves (Act No. 207, Pub. Acts 1923).     It has not been brought to our attention that this court has in any way indicated that the tendency of such corporations was injurious to the public interest.     This court had an opportunity in the case of *St. Helen Shooting Club* v. *Barber*, 150 Mich. 571, to disapprove of such contracts, but it did not do so.     Our attention has not been called to any holding of any court elsewhere that such a contract is against public policy.     We shall, therefore, have to disagree with the chancellor on this phase of the case.

Clark acknowledged said instrument to be the free act and deed of said corporation.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Sworn to and subscribed before me this
. . . . . . . . . . day of March, 1904.

DELLA J. CLARK,

Notary Public.

My commission expires June 2, 1907.

The further question whether the contract or conveyance is a unilateral one is discussed.    The appellee contends that the contract contained covenants for the St. Helen Shooting Club to perform, but that it was not signed by that company.    We think it is pretty late in the day to raise that question after the lease has been accepted by plaintiff and the premises occupied and the consideration paid for upwards of 20 years. *Bakker* v. *Fellows*, 153 Mich. 428.

There is some discussion in appellee's brief of the question as to whether this contract is a deed or a lease.    We think it is unimportant whether it is a deed or a lease.    What we have said here would apply to either.    2 Tiffany, Real Property, § 381.

We conclude that the conveyance in question here is a valid one, and that it is not void on the ground of public policy.    For these reasons the decree of the trial court must be reversed and one entered in accordance with this opinion.    The plaintiff will recover its costs in both courts.

SHARPE, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.