COOK *v.* MARKS.

1. UNITED STATES—SAVINGS BONDS—TRANSFER.
   Under Federal regulations relating to United States savings bonds, such bonds may not be transferred by way of security or otherwise.

2. SAME—SAVINGS BONDS—TRANSFER—USE AS SECURITY—FEDERAL REGULATIONS.
   Arrangement whereby wife, in whose custody United States savings bonds belonging to her husband, the plaintiff, and registered severally in the name of both, had been left for safekeeping, were deposited with defendant as security for a loan by defendant to the wife, the latter to indorse treasury check for proceeds of bonds in case it became necessary to enforce the security, involved a transfer of such bonds in violation of Federal regulations.

3. SAME—SAVINGS BONDS—TRANSFER—SCHEME TO AVOID FEDERAL REGULATIONS—EQUITY—CLEAN HANDS.
   As between parties to scheme to avoid the consequence of Federal regulations preventing the transfer of United States savings bonds, equity would leave them in the situation in which it found them, as neither party could urge they came into a court of equity with clean hands.

4. SAME—SAVINGS BONDS—EQUITY—CLEAN HANDS.
   Owner of United States savings bonds who sought to compel defendant, lender of money to plaintiff's wife, to deliver to plaintiff such bonds, registered severally in name of plaintiff and wife, is barred from equitable relief by clean hands' doctrine, where he had left such bonds with his wife for safekeeping, as well as by his failure to offer to do equity.

5. EQUITY—UNITED STATES SAVINGS BONDS—TRANSFER.
   Where neither the plaintiff, owner of United States savings bonds registered severally in the name of himself and wife, nor defendant in whose possession they were placed by the wife in contravention of Federal regulations preventing transfers of such bonds, were entitled to equitable relief either by order returning possession to plaintiff or by decree requiring

Wrongful conduct of plaintiff as a defense, see Restatement, Restitution, § 140.

plaintiff to facilitate payment of enough to reimburse defendant for loan to plaintiff's wife, court leaves parties where it finds them.

6. COSTS—EQUITY.
   No costs are allowed either party on appeal in equity suit where both bill and cross bill are dismissed and neither party prevailed.

CHANDLER, C. J., and STARR and SHARPE, JJ., dissenting in part.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted April 9, 1942. (Docket No. 65, Calendar No. 41,952.) Decided June 10, 1942.

Bill by Herbert B. Cook against Sadie S. Marks, doing business as Stock Loan Company, and Burton Marks to have ownership of bonds determined to be in plaintiff and to require delivery of the bonds. Cross bill by Sadie S. Marks and Burton Marks against plaintiff and Elenor L. Cook to have documents executed to facilitate payment of sufficient funds to pay amount loaned to Elenor L. Cook. Decree for plaintiff. Defendants appeal. Reversed and bill and cross bill dismissed.

*Max Kahn*, for plaintiff.

*Armstrong, Weadock, Essery & Helm* (*Joseph J. Marshall*, of counsel), for defendants.

SHARPE, J. (*dissenting in part*). This is a chancery suit in which plaintiff seeks a decree determining that he is the owner of certain United States bonds and for the delivery of the same. Plaintiff, a resident of Detroit, was the owner of $2,500 of United States bonds. He held them for approximately three years, then exchanged them for six $500 United States government savings bonds. These new bonds were issued in the name of Mr. Herbert B. Cook or Mrs. Elenor L. Cook and were

placed in the possession of Mrs. Cook for safe-keeping. Mrs. Cook operated an employment agency and at her business office she had a place for the safekeeping of valuable documents.

On or about March 27, 1940, plaintiff's wife was approached by Mrs. E. Betzinger who wanted to borrow the sum of $1,500 from her. Mrs. Betzinger offered a bonus of $750 for the loan of $1,500 for about 30 days. Plaintiff's wife did not have the ready cash to make such a loan but did have the control of the bonds. The lure of large profits proved too much for Mrs. Cook and within a few days the two women went to the office of the Stock Loan Company, a small loan company operated by defendant Sadie S. Marks. There they met defendant Burton Marks, a son of Sadie S. Marks, who as an attorney often assisted his mother in the operation of the loan company. The bonds which plaintiff's wife brought to the loan company contained the following provisions:

"This is a United States Savings Bond of Series D, authorized by the Second Liberty Bond Act, approved September 24, 1917, as amended, and issued pursuant to Treasury Department Circular No. 596, dated December 15, 1938, to which reference is made for a statement of the rights of holders, as fully and with the same effect as though herein set forth.

"This bond is not transferable; and, except as provided under said circular, it is payable, at maturity or on earlier redemption, only to the registered owner and upon the presentation and surrender of this bond with the request for payment duly executed on the back hereof, all in accordance with the provisions of said circular and the regulations prescribed from time to time thereunder."

On the back of each bond was printed a form to be filled in when the owner sought payment of the bond. Instructions as to the manner of securing

payment of the bond were printed on the back of the bond. They provided that the request for such payment be signed in the presence of and certified by one of the officers authorized by the secretary of the treasury and that the bond be delivered to the treasury department in Washington, D. C., or to a Federal reserve bank.

"Payment will be made by issuance of a check drawn to the order of the registered owner or other person entitled to payment and mailed to the address given in the request for payment."

Defendant Burton Marks accompanied Mrs. Cook to a bank where the request for payment was signed by Mrs. Cook and certified by a bank official. They then returned to the office of the Stock Loan Company where Mrs. Cook signed the following instrument:

"Due 180 days                                     $1,500
            Detroit, Mich. March 28, 1940
No.
"180 days after date for value received the undersigned promises to pay to SADIE S. MARKS or order FIFTEEN HUNDRED DOLLARS at The Manufacturers National Bank of Detroit, Michigan, with interest at an annual rate of 7 per cent. after date hereby depositing the following property:

"$3,000 face value U. S. Bonds; any time after 52 days and in any event not later than 180 days the holder will send in sufficient of said U. S. Savings Bonds to Treasury to repay this loan, but Treasury check to be issued in Mrs. Cook's name. Upon receipt of check Mrs. Cook will indorse in favor of note holder and hereby authorizes holder to indorse her name upon her failure to do so.

"If the security afforded by said property, shall, in the sole opinion of said holder, be insufficient, said holder may without notice to any party hereto de-

clare the principal of the note due and payable forthwith and enforce the security as aforesaid.

"Enforcement or preservation of any lien hereunder, or otherwise held, or liability of any party hereto, or to any guaranty or other undertaking are hereby waived by the undersigned and each indorser, original or subsequent, and the holder hereof may deal with any such lien or liability as if there were no other party hereto.

"Mrs. HERBERT B. COOK (sgd)
"Mrs. ELENOR L. COOK (sgd)"

Following the execution of the above instrument, a check was drawn in favor of Mrs. Cook who indorsed it and left it with Mr. Marks who gave Mrs. Betzinger the $1,500 represented by the check. At a later date, Mrs. Betzinger was arrested and convicted of having obtained money under false pretense, although such arrest and conviction did not grow out of the $1,500 loan to Mrs. Cook.

Plaintiff having learned of his wife's transactions with Mrs. Betzinger and defendants demanded the bonds. His request was refused. He then instituted the present suit to recover the bonds, claiming that defendants had knowledge of Mrs. Betzinger's fraudulent practices and are not bona fide purchasers; and that Mrs. Cook had no authority to pledge or sell the bonds. The cause came on for trial and the trial court held that the bonds were payable only to the registered owner or owners, that they were not transferable, and that the transaction was in violation of public policy. Defendants appeal.

It appears to us that the first question to be solved in this case is the right of plaintiff's wife to deal with the bonds.

In the case at bar, the bonds were registered in the names of plaintiff and wife. The regulations of

the United States government governing such bonds provide as follows:

"The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in these regulations, the Treasury Department will treat as conclusive the ownership of and interest in the bond expressed in the registration.    *    *    *
"1.  *Payment or Reissue*—A Savings Bond registered in the names of two persons as coowners, for example, 'John A. Jones OR Mrs. Mary C. Jones,' will be paid or reissued as follows:
" (a)   The bond will be paid (but not reissued) to either coowner, until the Treasury Department has received notice of his death, upon his individual request without requiring the signature of the other coowner on the bond; and upon payment to either coowner the other person shall cease to have any interest in the bond."

Under the above regulations, the bonds having been registered in and issued to "Mr. Herbert B. Cook or Mrs. Elenor L. Cook" were payable to either of these parties with or without the knowledge of the other. It follows that Mrs. Cook could make a valid request for payment of these bonds.

The remaining question may be stated as follows: Was the contract that Mrs. Cook made with Sadie S. Marks with respect to the bonds void as being in contravention of public policy?

It is urged by defendants that while the regulations state that the bonds are "not suitable for use as collateral for a loan," yet such use is not prohibited; that in the case at bar Mrs. Cook could make and complete the request for a loan and then contract that in the event of the nonpayment of the promissory note, Sadie S. Marks could send the bond in to the United States Treasury and upon

receipt of a check to her (Mrs. Cook) in payment of the bonds, she would indorse it to the holder of the note, and that the bonds are made nontransferable to relieve the treasury department of all burden of determining the ownership of the bonds.

In the case at bar, plaintiff signed a promissory note due in 180 days. The note also provided for the depositing of bonds with defendant Sadie S. Marks and an authorization to the holder of the note to send the bonds in for payment, the check to be made payable to Mrs. Cook with power in the holder of the note to indorse Mrs. Cook's name upon her failure to do so. The contract Mrs. Cook entered into with defendants in no way infringed any regulations of the United States Treasury department. Plaintiff's wife could have done what she authorized the defendant Sadie S. Marks to do. It was lawful for plaintiff's wife to cash the bonds. It was lawful for her to borrow the sum of $1,500 and sign a promissory note as security for the sum borrowed. It was lawful for her to authorize the defendant Sadie S. Marks to forward the bonds to the treasury department and to have Sadie S. Marks sign Mrs. Cook's name to the check in the event she failed to do so.

In *St. Helen Shooting Club* v. *Mogle,* 234 Mich. 60, 71, we said:

"It is not the policy of the law to unnecessarily restrict the right of persons to contract. When, however, the tendency of a contract, or a class of contracts, is manifestly injurious to the public interest, the court will avoid them."

In our opinion the contract plaintiff's wife and defendants entered into did not contravene the public policy of this State and may not be avoided upon that ground.

But it is urged that defendants had notice and knowledge of the manner in which Mrs. Betzinger was operating that should have put them on inquiry as to the good faith of the transactions she was bringing into the loan office. We are not in accord with this view. The record is void of any evidence that Mrs. Betzinger had anything to do with the arrangements made between plaintiff's wife and defendants. Mrs. Betzinger was only the medium for bringing these parties together. The money loaned to Mrs. Cook was strictly a business matter between Mrs. Cook and defendants. The record does not show that Burton Marks did or said anything to induce Mrs. Cook to loan the money to Mrs. Betzinger and the fact that Mrs. Cook made a loan to Mrs. Betzinger was no part of the arrangements between Mrs. Cook and defendants.

We are unable to say from the record that there was any fraud practiced upon Mrs. Cook by defendants and the decree of the trial court must be reversed. An order will be entered in this court dismissing plaintiff's bill of complaint. Defendants should recover costs.

CHANDLER, C. J., and STARR, J., concurred with SHARPE, J.

BOYLES, J. After this case was submitted on briefs, we requested counsel to submit further briefs on the equities between the parties. There is no question but that Federal regulations prevent the transfer of these United States savings bonds, either by way of security or otherwise. Defendants' plan involved a transfer of the bonds as security for a loan. This is shown by the promissory note and agreement under which the bonds were deposited with the defendants by Mrs. Cook:

"If the *security* afforded by said property (the bonds), shall, * * * be insufficient, said holder (Marks) may without notice * * * enforce the *security* as aforesaid.

"Enforcement or preservation *of any lien here-under*, * * * are hereby waived by the under-signed."

This plan was a plain subterfuge to avoid the consequence of the Federal regulations. As between the parties to this scheme, equity would leave them in the situation in which it found them. Neither of them could successfully urge that they came into equity with clean hands. This rule also bars the plaintiff (Mrs. Cook's husband) from equitable relief.

Counsel for defendants urge that both the plaintiff and the defendants herein are innocent parties to the transaction; that where one of two innocent parties must suffer, the one whose act occasions the loss must stand the consequences. In other words, that the plaintiff, by putting it in his wife's power to collect the money on these bonds, must bear the loss because defendants are entirely innocent parties. The fallacy in this argument rests in the fact that defendants are not innocent parties. They knew the Federal restriction against the very end they sought to accomplish. They conceived a roundabout procedure in order to avoid the effect of the regulation, and this was at its best a mere subterfuge. The bonds are still in defendants' possession, and we cannot say whether the United States treasury department will ultimately recognize any right in defendants to receive any money on them if both of the registered holders (Mr. and Mrs. Cook) refuse to indorse a payment check. The treasury department may still refuse to accept the alleged power of attorney.

Nor can we find that the plaintiff himself has any right to relief in equity. He does not offer to do equity, nor does he come into equity with clean hands. When he took the bonds in the names of himself and his wife, he knew that she then had the same right of ownership as he had. When he gave his wife possession of the bonds, he gave her greater rights than he himself retained, knowing that she could then surrender the bonds and obtain payment without his knowledge or consent. He himself could not thereafter surrender the bonds and obtain payment, not having possession. Through his act, he laid the foundation for the consequences which followed and is not an innocent bystander as to the results. In the opinion of Mr. Justice Sharpe, we would give our approval to this transaction. With this conclusion, I cannot agree. The circuit judge properly held as follows:

"The bonds themselves were issued under regulations well known to all parties in the case that they were not transferable. The method and means employed by the defendant, and the alleged loan which he says he made, were in direct contravention of the terms of the bonds themselves, and also transgressed the purpose and intention of the legislation by authority of which they were issued.   *   *   *

"The attempt to pledge these bonds for the alleged loan is void.

"Sound public policy must condemn such an attempted transaction."

However, the decree entered below directed the defendants to return the bonds to the plaintiff. As hereinbefore indicated, plaintiff is not entitled to this relief from an equity court.

The defendants filed a cross bill asking the court to determine them entitled to a sufficient number of

said bonds to reimburse them for the loan and that plaintiff and his wife be required to execute any instrument necessary to facilitate the payment. However, defendants have the bonds and the United States treasury department will ultimately be called upon to determine who may cash them. Equity will leave them where it finds them.

An order may be entered dismissing both the bill of complaint and the cross bill, but without costs, neither party having prevailed.

NORTH, BUTZEL, and BUSHNELL, JJ., concurred with BOYLES, J. WIEST, J., took no part in this decision.